Bernard FEINBERG, Plaintiff,

v.

The FEDERAL DEPOSIT INSURANCE
CORPORATION, and Alan R.
Miller, Defendants.

C. A. No. 74–1150.

United States District Court,
District of Columbia.

Aug. 13, 1976.

Samuel J. Betar, Joseph A. Lamendella, Chicago, Ill., Ralph A. Muoio, Richard W. Skillman, John F. Dienelt, Washington, D. C., for plaintiff.

Redford J. Wedel, Acting Gen. Counsel, Burton L. Raimi, Acting Deputy Gen. Counsel, Werner Goldman, Counsel, Douglas H. Jones, for defendants.

Before McGOWAN, Circuit Judge, and SMITH and RICHEY, District Judges.

CHARLES R. RICHEY, District Judge.

This case has been remanded[1] to this three-judge district court for determination of whether section 8(g)(1) of the Federal

---

1. *Feinberg v. F.D.I.C.,* 522 F.2d 1335, 1343 (D.C.Cir. 1975).

Deposit Insurance Act, 12 U.S.C. § 1818(g)(1) (1970)[2], is constitutional insofar as it authorizes the Federal Deposit Insurance Corporation (hereinafter, "FDIC") to issue a Notice and Order of Suspension upon the mere fact of an indictment for a felony involving dishonesty or breach of trust without provision for a prior or subsequent opportunity to be heard. The parties have filed cross motions for summary judgment and have agreed that there are no material facts in dispute.

This issue has arisen as the result of the plaintiff, Bernard Feinberg, receiving a Notice and Order of Suspension after he was indicted, on May 9, 1973, by a federal grand jury in the United States District Court for the Northern District of Illinois. The indictment charged him with conspiracy to commit mail fraud, a felony, in violation of 18 U.S.C. § 1341. Plaintiff was tried under a superseding mail fraud indictment, and on June 27, 1975, was found guilty on four counts of mail fraud and not guilty on two. He was sentenced to six months imprisonment on one count and was given a suspended sentence on the remaining three counts. On May 17, 1976, the United States Court of Appeals for the Seventh Circuit, affirmed Feinberg's conviction. Plaintiff's petition for rehearing was denied on July 12, 1976. Counsel for plaintiff have indicated that they will file a petition for a writ of certiorari in the Supreme Court.

Prior to being suspended on February 8, 1974, plaintiff Feinberg was president and director of the Jefferson State Bank, an Illinois State Banking corporation insured by the F.D.I.C. and having its principal place of business in Chicago, Illinois. Feinberg had been president and director of the bank for fourteen years and received a salary of $55,000 from the bank for the year 1973. Feinberg also owns twenty-eight per cent of the bank's outstanding stock and is the administrator of the estate of his deceased brother, who owned twenty-three per cent of the bank's outstanding stock. Plaintiff will inherit one-third of his deceased brother's stock, thereby giving him approximately a thirty-five per cent interest in the bank.

Prior to the issuance of the Notice and Order of Suspension, plaintiff and his attorneys had a conference with the F.D.I.C. Regional Director for Chicago. At this December 14, 1973 conference, Feinberg requested a hearing, which was denied for the stated reason that the Washington, D.C. staff of the F.D.I.C. had decided that section 1818(g)(1) was applicable to the plaintiff and that a hearing would serve no useful purpose.

Since Feinberg's suspension, the F.D.I.C. has permitted two bank officials to make presentations prior to any action under section 8(g)(1). One official was suspended, the other was not. As to the suspended

---

**2.** Section 8(g)(1) provides:

"Whenever any director or officer of an insured bank, or other person participating in the conduct of the affairs of such bank, is charged in any information, indictment, or complaint authorized by a United States attorney, with the commission of or participation in a felony involving dishonesty or breach of trust, the appropriate Federal banking agency may, by written notice served upon such director, officer, or other person suspend him from office and/or prohibit him from further participation in any manner in the conduct of the affairs of the bank. A copy of such notice shall also be served upon the bank. Such suspension and/or prohibition shall remain in effect until such information, indictment, or complaint is finally disposed of or until terminated by the agency. In the event that a judgment of conviction with respect to such offense is entered against such director, officer, or other person, and at such time as such judgment is not subject to further appellate review, the agency may issue and serve upon such director, officer, or other person an order removing him from office and/or prohibiting him from further participation in any manner in the conduct of the affairs of the bank except with the consent of the appropriate agency. A copy of such order shall also be served upon such bank, whereupon such director or officer shall cease to be a director or officer of such bank. A finding of not guilty or other disposition of the charge shall not preclude the agency from thereafter instituting proceedings to remove such director, officer, or other person from office and/or to prohibit further participation in bank affairs, pursuant to paragraph (1), (2), (3), (4), or (7) of subsection (e) of this section. [footnote omitted]

official, the sole issue at his hearing was whether the indictment charged a felony involving dishonesty or breach of trust, a requirement for suspension under the statute. As to the non-suspended official, an executive panel of the F.D.I.C. determined, after a hearing, that the alleged conduct, a violation of 18 U.S.C. § 656 (willfully misapplying bank funds) involved a practice prevalent in the banking industry. The panel therefore decided not to suspend the official.

On July 31, 1974, plaintiff brought this action seeking a declaration that 12 U.S.C. § 1818(g)(1) "is unconstitutional on its face in that it authorizes the [F.D.I.C.] to effect a substantial deprivation of liberty and property without satisfying minimal due process requirements. Specifically, [plaintiff claims] that the lack of any standards other than the mere fact of a felony indictment, and the lack of any provision in the Act for notice, hearing or judicial review of section 8(g)(1) suspension orders, render[s] the Notice and Order of Suspension against him void; consequently, he [seeks] to enjoin its enforcement." 522 F.2d at 1337.

Defendants argue that this Court need not reach the merits of plaintiff's claim because, they assert, this case is not justiciable inasmuch as plaintiff's conviction has triggered the application of section 1829 of title 12, and because plaintiff has allegedly failed to seek a modification of the Notice and Order of Suspension from the defendants.

## I. JUSTICIABILITY

This action focuses on section 1818 of the Federal Deposit Insurance Corporation Act, 12 U.S.C. §§ 1811 *et seq.* Section 1818 sets forth the action the F.D.I.C. can take with respect to insured banks and their officers, directors, and employees who are thought to be acting either contrary to sound busi-

ness practices or in violation of the law, and where an officer, director or employee has been charged in an indictment with a felony involving dishonesty or breach of trust. Section 1818 can be bifurcated as follows: subsections (a) through (d) relate to insured banks, whereas subsections (e) through (q) relate to officers, directors and employees of insured banks. These latter subsections can be further divided into those subsections relating to the F.D.I.C.'s powers regarding officers, directors and employees who are believed to have committed a breach of sound business and financial practice or to have violated the law (subsections (e) and (f)), and the subsection relating to the F.D.I.C.'s power regarding officers, directors and employees who have been indicted for a felony involving dishonesty or breach of trust (subsection (g)).[3] Subsections (h) and (i) relate to hearings and judicial review. These subsections provide for a hearing and judicial review under subsections (e) and (f), but do not provide for a hearing under subsection (g), and substantially limit judicial review of F.D.I.C. action under subsection (g). The remaining pertinent subsection is (j), which provides for penalties for persons who violate suspension notices and cease and desist orders. Another section of importance here is section 1829 [4] of title 12, which prohibits directors, officers, and employees from serving in those capacities after having been convicted of any criminal offense involving dishonesty or a breach of trust.

■ The threshold question presented is whether a justiciable controversy with respect to section 8(g)(1) of the Federal Deposit Insurance Corporation Act, 12 U.S.C. § 1818(g)(1), continues to exist despite the fact that plaintiff has been convicted, thereby triggering the application of section 1829 of the Act, which prohibits the plaintiff from serving as a director or offi-

3. *See* note 1, *supra.*

4. 12 U.S.C. § 1829 provides:

Except with the written consent of the Corporation, no person shall serve as a director, officer or employee of an insured bank who has been convicted, or who is hereafter con-

victed, of any criminal offense involving dishonesty or a breach of trust. For each willful violation of this prohibition, the bank involved shall be subject to a penalty of not more than $100 for each day this prohibition is violated, which the Corporation may recover for its use.

cer of the insured bank. The Court finds that the case remains justiciable because of the secondary impact of the Notice and Order of Suspension issued pursuant to 12 U.S.C. § 1818(g)(1)—prohibiting plaintiff from "participation in any manner in the conduct of the affairs of the bank." 12 U.S.C. § 1818(g)(1).

A Notice and Order of Suspension may provide for either or both of the following prohibitions: (1) suspend the director or officer from holding office, and (2) prohibit him from further participation in any manner in the conduct of the affairs of the bank. In this case, plaintiff was subjected to both prohibitions. The Notice and Order of Suspension of § 1818(g)(1) can only follow an indictment. In this case, plaintiff was notified of the suspension nine months after his indictment. Upon conviction, however, the prohibition of section 1829 is triggered. That section prohibits an officer or director from continuing to serve in such capacity. Thus, upon conviction the first prohibition of section 1818(g)(1), holding office, is superceded by the prohibition of section 1829. In this case, plaintiff was convicted on June 27, 1975, and is therefore subject to the prohibition of section 1829.

If the Notice and Order of Suspension issued against the plaintiff had been limited to his holding of office and position on the board of directors, this case would be non-justiciable, because the Court could not afford the plaintiff any relief that would affect his status, inasmuch as that status would be controlled by section 1829 rather than section 1818(g)(1). However, the Notice and Order of Suspension was not limited to the first prohibition of section 1818(g)(1). Instead, it also prohibited the plaintiff from participating in any manner in the conduct of the affairs of the bank.

Since the second prohibition of section 1818(g)(1) is unaffected by plaintiff's conviction and section 1829's prohibition, the Notice and Order of Suspension continues to have an effect upon the plaintiff—it keeps him from participating in the affairs of the bank and, particularly, voting his stock. Thus, a determination of the issues raised herein would have a practical and real effect upon the interests of the plaintiff, making this case justiciable.[5]

Defendants, however, maintain that since the plaintiff failed to avail himself of the opportunity of having the F.D.I.C. lift the remaining prohibition of Section 1818(g)(1), the court should decline to consider plaintiff's claims. The defendants' argument for non-justiciability is premised upon a reading of section 1818(j)[6] which would

---

5. After this case was submitted, the United States Court of Appeals for the Seventh Circuit upheld Feinberg's conviction and denied *en banc* consideration. The affirmance of Feinberg's conviction by the Seventh Circuit does not alter the justiciability of this case. The Notice and Order of Suspension provides that the prohibition against plaintiff participating in the affairs of the bank "shall remain in effect until terminated by the Board or until the final disposition of said indictment." Since there are further appellate proceedings that will occur (writ of certiorari to the Supreme Court), the secondary impact of the Notice and Order of Suspension will continue to exist, and this case will remain justiciable. It is only when there is a "final disposition" of the indictment that the case will cease to be justiciable. At that time the F.D.I.C., pursuant to section 1818(g)(1) will have two choices: either to decide to make permanent the prohibition against Feinberg's involvement with the affairs of the bank or not to impose such a prohibition. In either event, since the original Notice and Order of Suspension would be no longer extant,

the case might not be justiciable. But we are not at that juncture; nor does that time appear imminent.

6. 12 U.S.C. § 1818(j) provides:

Any director or officer, or former director or officer of an insured bank, or any other person, against whom there is outstanding and effective any notice or order (which is an order which has become final) served upon such director, officer, or other person under subsection (e)(5), (e)(7), (e)(8), or (g) of this section, and who (i) participates in any manner in the conduct of the affairs of the bank involved, or directly or indirectly solicits or procures, or transfers or attempts to transfer, or votes or attempts to vote, any proxies, consents, or authorizations in respect of any voting rights in such bank, or (ii) without the prior written approval of the appropriate Federal banking agency, votes for a director, serves or acts as a director, officer, or employee of any bank, shall upon conviction be fined not more than $5,000 or imprisoned for not more than one year, or both.

permit the F.D.I.C. to lift that part of the Notice and Order of Suspension prohibiting plaintiff from participating in any manner in the conduct of the affairs of the bank. A careful reading of section 1818(j)(i) and (ii) reveals no language which would expressly grant the F.D.I.C. the power to permit the plaintiff to participate in the conduct of the affairs of the bank having been prohibited from doing as much by a Notice and Order of Suspension issued under section 1818(g)(1). Only (ii) of section 1818(j) contains language which appears to give the F.D.I.C. the power to permit the plaintiff to vote for a director or serve as a director or officer of the bank.

In any event, the defendants have argued that the F.D.I.C. has the inherent power to amend a Notice and Order of Suspension so as to remove the second prohibition of section 1818(g)(1). At oral argument, plaintiff's counsel agreed that the F.D.I.C. probably did have the inherent power to amend the notice. However, plaintiff's counsel did not admit that such a possibility was made available to the plaintiff or was a realistic possibility in this case. This is critical.

 Defendants' argument is akin to a claim of failure to exhaust administrative remedies. Under the doctrine of exhaustion of administrative remedies, a party must present his or her claim to the administrative process for a determination prior to presenting the claim to a court for resolution. The basis of the doctrine is that the courts should not be resorted to if the agency could first resolve the issue and afford the party the relief sought. There are two important limitations on the doctrine. First, the administrative process must be "available" to the party, and second, sub-mission to that process of one's claim cannot be an exercise in futility. Both of these limitations are applicable in this case.

 Defendant F.D.I.C. admits that it has no formal or informal regulations setting forth the process they contend exists.[7] Further, the statute, and particularly section 1818(j) as construed above, does not express such a process. Thus, it would only be by word of mouth or by experience with the agency that a person would know of the procedure, assuming such a procedure does exist. This can hardly be characterized as an "available" process so as to invoke, by analogy, the doctrine of exhaustion of administrative remedies.

In addition to the lack of availability of such a process, the facts of this case evince a futility that would excuse plaintiff's failure to make the request which, the defendant maintains, could have resulted in the relief plaintiff seeks in this Court. It is undisputed that the plaintiff requested a hearing which was denied for the reason that the F.D.I.C. saw no purpose for a hearing. And, it was not until after this suit was brought that the F.D.I.C. began holding hearings arguably of the kind sought by the plaintiff. Thus, plaintiff could have no expectation from the F.D.I.C.'s past action that it would be receptive to a request that the entire second prohibition of a section 1818(g)(1) Notice and Order of Suspension would be lifted.[8]

While an argument can be made that this Court should remand this matter to the agency because the plaintiff now knows of and will be afforded the opportunity of seeking an amendment to the Notice and Order of Suspension, it is not compelling. Defendant F.D.I.C. admits that it is in a

---

7. Defendants' counsel at oral argument alluded to an internal agency memorandum discussing this question. The memorandum was not, however, submitted to the Court, nor were the specifics of the memorandum disclosed. Furthermore, defendants did not assert that this internal memorandum was made known to the plaintiff or others subjected to the section 1818(g)(1) process.

8. Defendant states that it has on some occasions lifted the prohibition. However, those instances were the exception and were apparently for the maintenance of the financial institution, rather than in the interests of the individual concerned. For example, the F.D.I.C. permitted plaintiff certain limited participation, but only because he was the only person familiar with the issue. These instances hardly form the basis for a belief that the F.D.I.C. would totally lift the second proscription of section 1818(g)(1), which is what plaintiff seeks by maintaining this action.

state of confusion with respect to what it should and should not consider (in the first instance) in determining whether to issue a Notice and Order of Suspension. The defendants' confusion can therefore be expected to reach an amending proceeding. In the past, permission has been given to participate in the conduct of the bank's affairs in circumstances requiring a lifting of the prohibition for the continued operation of the bank. But plaintiff does not seek such a limited amendment. Rather, plaintiff seeks to have the prohibition lifted *in toto*. To send the plaintiff back to the agency under such circumstances would not only be unfair to him, but would perhaps render a disservice to the F.D.I.C. itself, given its admitted confusion.

Having considered defendants' arguments, the Court concludes that this case remains justiciable because of the secondary impact upon the rights of the plaintiff of the Notice and Order of Suspension issued pursuant to 12 U.S.C. section 1818(g)(1), prohibiting plaintiff from "participating in any manner in the conduct of the affairs of the bank." [9]

## II. PLAINTIFF'S DUE PROCESS CLAIM

■■■ "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendments." *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). However, not all inter-

ests are entitled to due process protection. *Cafeteria & Restaurant Workers Local 473 v. McElroy*, 367 U.S. 886, 895–96, 81 S.Ct. 1743, 1748–49, 6 L.Ed.2d 1230 (1961). Thus, before a court can consider the question of what incidents of due process are required to attend governmental action relating to the interest involved, the question of whether the interest at stake is constitutionally protected must first be addressed. *Jones v. Johnston*, 534 F.2d 353, 358 (D.C. Cir. 1976).

### A. The Interest to be Protected.

It appears clear to this Court that the F.D.I.C., acting pursuant to 12 U.S.C. § 1818(g)(1), has deprived plaintiff Feinberg of a constitutionally-protected property interest—namely, effective ownership of his voting stock. While the ramifications of depriving plaintiff Feinberg of the opportunity to vote his stock have not been completely articulated, they are sufficiently clear for this Court to conclude that this interest is at least of the same stature as other property interests that have been deemed entitled to constitutional protection. Compare *Bell v. Burson*, 402 U.S. 535, 538, 91 S.Ct. 1586, 1588, 29 L.Ed.2d 90 (1970) (driver's license); *Fuentes v. Shevin*, 407 U.S. 67, 70–73, 92 S.Ct. 1983, 1989–90, 32 L.Ed.2d 556 (1972) (household goods purchased under conditional sales contracts; purchasers entitled to possession), with *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 604, 94 S.Ct. 1895, 1898, 40 L.Ed.2d 406 (1974) ("heavily encumbered" goods "purchased under an installment sales con-

---

9. Since the Court finds that the case remains justiciable because of the existing secondary impact of section 1818(g)(1) upon the property rights of the plaintiff, the Court need not consider plaintiff's argument that the Speedy Trial Act, 18 U.S.C. § 1361 *et seq.* (Supp.1976), brings the claims raised by plaintiff within the rule that claims likely of repetition yet evading review are permissible to consider. See *Moore v. Ogilvie*, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969); *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). Also, the Court need not consider plaintiff's other argument that this case is justiciable for the same reasons the Supreme Court found Congressman

Powell's case justiciable in *Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). This Court would only note that if plaintiff's argument is that this case would remain justiciable solely because the parties disagreed about the constitutionality of section 1818(g)(1), it would be untenable because even an action seeking a declaratory judgment must meet the requirements of justiciability, i. e. that there be a likelihood of actual effect of the decision of the court. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937); *Landau v. Chase Manhattan Bank, N.A.*, 367 F.Supp. 992, 997 (S.D.N.Y. 1973).

tract"); [10] *Cafeteria & Restaurant Workers Local 473 v. McElroy,* 367 U.S. at 896, 81 S.Ct. at 1749 ("opportunity to work at one isolated and specific military installation").

Defendants, while not really disputing the seriousness of the deprivation, assert that the plaintiff is nevertheless not only not entitled to a pre-suspension hearing, but also that there is no due process requirement for a post-suspension hearing in regard to action taken pursuant to 12 U.S.C. § 1818(g)(1). This latter argument is bottomed on defendants' belief [11] that a Notice and Order of Suspension based upon the return of an indictment, and issued within the standards of section 1818(g)(1), does not by its nature admit a hearing before the regulatory agency since there are no material facts which may properly be disputed, the indictment being dispositive on the issue of probable cause that the individual committed the offense charged. Defendants add that since, in their view, the only

question is probable cause, a re-examination of that issue by the agency would result in an impermissible intrusion into the criminal process. [12] And, they maintain that the criminal trial would in any event serve as a speedy and appropriate forum for the individual to contest the question of probable cause. Finally, defendants seek to emphasize the importance of the governmental interest underlying section 1818(g)(1).

It appears arguable that if the issuance of a Notice and Order of Suspension were automatic upon the return of an indictment or the filing of an information or complaint, then there might not be a need for a hearing or other incidents of due process. [13] Such an argument could only retain its vitality though if there were no agency determination required prior to the issuance of the Notice and Order of Suspension. [14] But this is not the case. Section 1818(g)(1), by its very language, requires that the agency decide whether the crime

**10.** Justice Stewart, dissenting, was of the opinion that the "deprivation of property" in *W. T. Grant Co.* was "identical to that at issue in *Fuentes . . . ."* 416 U.S. 629, 631, 94 S.Ct. 1910, 1911.

**11.** When plaintiff Feinberg requested a hearing from the F.D.I.C., the agency responded that there would be no need for a hearing.

**12.** Defendants maintain that this would not only force premature disclosure of information by the government but could also lead to fifth amendment problems for the individual.

**13.** For example, in *R. A. Holman & Co. v. Securities and Exchange Commission,* 112 U.S. App.D.C. 43, 299 F.2d 127, *cert. denied,* 370 U.S. 911, 82 S.Ct. 1257, 8 L.Ed.2d 404 (1962), a case relied upon by the defendants, the court upheld an S.E.C. regulation which *"automatically disqualified"* the broker-dealer in securities from "engaging in the distribution of securities" if the broker-dealer were subject to pending agency proceedings. *Id.* at 129 (emphasis added). The court, after considering the public interest weighed against the broker-dealer's interest, concluded that the rule's application was not arbitrary or an unconstitutional deprivation of plaintiff's property interest of a "going business." In reaching this decision, the court recognized the agency's broad rule-making power in this area, *id.* at 132, the seriousness of the public interest, and the minimal injury to plaintiff's rights. The *Holman* court obviously concluded that the rule itself embod-

ied this decision, and found that its automatic application did not effect due process. *Holman* is distinguishable from the instant case insofar as the statute does not provide for automatic suspension, but rather, leaves to the agency the discretion to balance the competing interests in each particular case.

Nor do the so-called police suspension cases support defendants' argument here. In those cases where no hearing at all was required, such as *McKeithen v. City of Stamford,* 149 Conn. 619, 183 A.2d 280 (1962), the litigants, if found not guilty, would have been statutorily entitled to compensation. As noted *infra,* plaintiff Feinberg's loss would not be compensable. Furthermore, reliance on these cases is questionable in light of the recent decision of the Supreme Court in *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

**14.** It is for this reason that defendants seek to distinguish this case from *Fahey v. Mallonee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947). *Fahey* concerned an attack upon a regulation which provided for a hearing after the appointment of a conservator for a federal savings and loan association. While the decision in the case rested on other grounds, *id.* at 255, 67 S.Ct. at 1556–57, the court, recognizing the need for summary action, *id.* at 253, 67 S.Ct. at 1556, and the "history and customs of banking," could not say that the regulation was unconstitutional for its failure to provide a *pre-*appointment hearing. *Id.* at 254, 67 S.Ct. at 1556.

charged is one "involving dishonesty or breach of trust." [15] Given the variety and nature of state offenses, it is apparent that the agency must exercise discretion as to this issue. This discretion, in fact, is enhanced by the lack in the statute of a definition of a crime of "dishonesty or breach of trust." But this is not the only discretionary question posed by the statute. The statute interjects an added element of discretion by providing that the agency "may" issue a Notice and Order of Suspension; it is not required to do so. Furthermore, when the statute is construed it appears clear [16] that even if the agency determines that the crime charged is one involving dishonesty or a breach of trust, the agency is still given—and in fact has exercised [17]—the discretion not to issue a Notice and Order of Suspension. In addition, it is significant for purposes of due process that no specific guidelines are provided in the statute for the exercise of this discretion.[18] The only ascertainable guidance is the general purpose of the statute: to insure the public's confidence in the stability of the financial institution. Given the fact of and the extent [19] of the discretion which attends

15. It is undisputed that the agency does afford persons who are about to be suspended the opportunity to meet informally to discuss the question of whether the crime is one of dishonesty. It is also undisputed that plaintiff was given this opportunity. Thus, it might appear that plaintiff cannot attack the statute because it has not been applied in an unconstitutional manner as to him. *See Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). However, the question of dishonesty is not the only question faced by the agency in deciding whether to invoke the statute. The agency is also vested with discretion to determine generally whether the purposes of the statute would be served by its use in a particular case. See pp. 117–118, *infra.* It is on this question that plaintiff did not have an opportunity to present evidence or otherwise maintain that the statute should not have been applied to him.

16. The statute provides in pertinent part: "(g)(1) Whenever any director or officer of an insured bank . . . is charged in any . . . indictment . . . with the commission of or participation in a felony involving dishonesty or breach of trust the . . agency *may,* by written notice served upon such director, officer . . . suspend him from office and/or prohibit him from further participation in any manner in the conduct of the affairs of the bank, . . ." (emphasis added)
A fair reading of this statute reveals that the word "may" does not refer to the determination of whether the indictment charges a crime involving "dishonesty or breach of trust." Instead, once the agency determines that the crime charged comes within the category of crimes encompassed by the statute, the statute still provides that the agency *may* determine not to issue a Notice and Order of Suspension. Further, the interjection of the "and/or" invests the agency with the further discretion of either one or the other, or both, of these separate remedies: suspension and/or prohibition from bank involvement.

17. As set forth in the exposition of the facts, *supra,* defendants have, at least on one occasion, exercised this very discretion: not to suspend a bank official who was indicted for a crime clearly involving dishonesty and a breach of trust. See note 23, *infra.*

18. Professor Davis in his *Treatise* advocates the view that the absence of procedural safeguards when compounded by the lack of standards for the exercise of discretion, which in turn increases the possibility of arbitrary or capricious action, is really a due process rather than a delegation problem. K. Davis, *Administrative Law Treatise* §§ 2.08, 2.09–10 (1972). See also *McGautha v. California,* 402 U.S. 183, 275 n. 27, 91 S.Ct. 1454, 1501 n. 27, 28 L.Ed.2d 711 (1970) (Brennan, J., dissenting). This Court agrees, particularly in the context of this case.

19. Defendants rely upon the statement of Senator Proxmire, a proponent of the bill establishing section 1818(g)(1), that the process would be "relatively routine." 112 Cong.Rec. 20081. What is routine, however, is not necessarily automatic. This has been borne out with respect to the section 1818(g)(1) process, since recently one bank official was not suspended even though the crime with which he was charged (willful misappropriation of bank funds in violation of 18 U.S.C. § 656) clearly represents a crime involving "dishonesty and a breach of trust." It is this statutorily-created capability on the part of the agency to exercise discretion that gives rise to concern for due process in this case.
*Manges v. Camp,* 474 F.2d 97 (5th Cir. 1973), does not contradict this reasoning. While noting that the section 1818(g)(1) process was intended to be routine, *id.* at 100–101, that court did not examine the statute from the perspective of the issues presented in this case. Instead, the issue there was whether section 1818(g)(1) permitted the Comptroller of the Currency of the United States to prohibit

118

the issuance of a Notice and Order of Suspension, coupled with the resultant deprivation of a constitutionally-protected right, it is therefore clear that there is a need here for imposing the safeguards of due process; for, the "touchstone of due process is protection of the individual against arbitrary action of the government, *Dent v. West Virginia,* 129 U.S. 114, 123 [9 S.Ct. 231, 233, 32 L.Ed. 623] (1889)," *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2975 (1974).

■ The criminal trial is hardly the proper or timely hearing for the deprivation at issue. Despite the Speedy Trial Act, 18 U.S.C. § 3162 *et seq.* (Supp.1976), the interim between indictment and trial is sufficient time within which plaintiff's interest could be permanently and irreparably impaired.[20] Moreover, contrary to defendant's belief, the question relating to issuance of a Notice and Order of Suspension is not the person's guilt or innocence but, rather, whether the crime charged can be characterized as a crime involving "dishonesty or breach of trust," and whether the decision to issue a Notice and Order of Suspension in a particular case is necessary to further the legislative purpose of the statute.[21] Since a criminal trial is not a forum for addressing either of these questions, it is not a permissible substitute for affording plaintiff the protection of having an opportunity to be heard.

■ There is no question but that there is a strong governmental purpose for a speedy and efficient action in order to maintain the public's confidence in the insured financial institutions. See 112 Cong. Rec. 20080 (1966) (Remarks of Senator Proxmire, a sponsor of the bill); Report of the Senate Committee on Banking and Currency, S.Rep.No.1482, 89th Cong., 2d Sess. 5–6 (1966); Report of the House Committee on Banking and Currency, H.Rep.No.2077, 89th Cong., 2d Sess. 4–5 (1966); Hearings on S. 3158 Before the Senate Committee on Banking and Currency, 89th Cong., 2d Sess. 28, 30 (1966) (respective statements of Joseph W. Barr, Undersecretary of the Treasury, and Kenneth H. Randall, Chairman, Federal Deposit Insurance Corporation). The importance of this interest has been recognized in the past. See *Fuentes v. Shevin,* 407 U.S. at 92 & n. 26, 92 S.Ct. 2000 & n. 27, citing *Fahey v. Mallonee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1946). But the importance of the governmental interest alone does not provide a basis for not affording *any* protection to interests that are constitutionally deserving of protection. Instead, the importance of the governmental interest is to be considered in determining what incidents of due process are necessary and appropriate under the circumstances. *Mathews v. Eldridge,* 424 U.S. at 332–355, 96 S.Ct. 901–903. Thus, where an important governmental interest requires summary action, immediate and full post-action hearings have been held to be within the parameters of due process. See *Goldberg v. Kelly,* 397 U.S. 254, 263 and n. 10, 90 S.Ct. 1011, 1018 and n. 10 (1970).

■ This Court concludes that defendants have deprived the plaintiff of a consti-

Manges, who had been convicted of a felony several years prior thereto, from participating in the affairs of a bank of which he owned the controlling shares of stock. The court, however, took moment to comment that since the section 1818(g)(1) process, unlike other sections of the statute, did not provide for a hearing, it

"is the only section that could possibly subject a person to possible arbitrary and capricious judgment of one individual." *Id.* at 100.

The court added that the lack of a hearing in itself raises "serious constitutional questions." *Id.* at 101.

**20.** This case is therefore distinguishable from *Romanowski v. Board of Ed. of Jersey City,* 89 N.J.Super. 38, 213 A.2d 313 (App.Div.1965), where while no post-suspension hearing was afforded for a board of education official, the court found that no injury would inure to the person suspended since if he were acquitted of the charge he would, by statute, be entitled to compensation. *Id.* at 90, 213 A.2d at 314.

**21.** Since the question of probable cause is not the appropriate question presented by the statute, and given the nature of the proper questions, a section 1818(g)(1) hearing would not force the government into premature disclosure or present fifth amendment problems for the individual, and would thus not present an impermissible intrusion into the criminal process.

tutionally-protected property interest. Having so concluded, the Court now turns to the question of whether this has been accomplished in violation of the Constitution. To make this determination, the Court must necessarily determine what minimal incidents of due process are required under the circumstances.

### B. *Due Process Under the Circumstances*

■ "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914). And while at one point it appeared that due process required a hearing *prior* to any deprivation of a constitutionally-protected interest, with the exception of certain "extraordinary circumstances," *Fuentes v. Shevin*, 407 U.S. 67, 91, 92 S.Ct. 1983, 1999, 32 L.Ed.2d 556 (1972), citing *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971), it now appears that the process due in a particular case is to be determined by the circumstances, *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).[22] Reaching this determination

> "requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

In examining the private interest, this Court notes, as it did above, that the precise ramifications of plaintiff Feinberg's being prohibited from voting his stock have not been completely articulated. There is no question, however, that this deprivation has a serious impact on the plaintiff's financial status. While defendants argue that the seriousness of the injury is diminished by the temporary nature of the deprivation, we decline to characterize it as such. A Notice and Order of Suspension "remains in effect until such information, indictment, or complaint is finally disposed of or until terminated by the agency." 12 U.S.C. § 1818(g)(1). Such a final disposition, considering the possible appellate avenues, presents the possibility of a substantial passage of time. And while the agency can terminate the Notice and Order of Suspension on its own initiative, such terminations have not occurred and appear unlikely in the future. Being so contingent, agency termination does not diminish the expected duration of the deprivation. Moreover, unlike *Eldridge*, this case involves a permanent loss of property in that Feinberg cannot be awarded full—or, for that matter, even partial—retroactive relief. 424 U.S. at 339, 96 S.Ct. at 905.

Also as stated above, there is a strong governmental-public interest in speedily and efficiently removing indicted officers, directors, or employees from financial institutions, the viability of which depend upon the public's confidence. See page 118, *supra*. But it also must be recognized that the costs of providing the incidents of due process would not be significant since there are simply not many § 1818(g)(1) cases.[23] Moreover, balanced against the governmental interest in minimizing administrative cost is the governmental interest in a sound

---

**22.** For a discussion of this development see *In Re The Oronoka*, 393 F.Supp. 1311 (D.Maine 1975).

**23.** "[I]n the years 1974 and 1975, 34 directors and/or officers of State nonmember banks, such as banks being within the regulatory jurisdiction of the FDIC, were indicted on felony charges. . . . Of the total number of individuals indicted, 25 voluntarily sus-

pended themselves in lieu of having a suspension issued against them. Nine individuals . . . were suspended pursuant to a notice authorized by Section 8(g)(1)."
Memorandum of points and authorities in support of defendants' motion to dismiss or for summary judgment and in opposition to plaintiff's motion for summary judgment, at 17 n. 38.

**120**

banking system. Congress itself has emphasized that "to permit suspensions and removals without thorough consideration would be unfair to the institution and officers involved. *Any system which would permit this would have a harmful effect on the banking system itself and on depositors, borrowers, and the public.*" S.Rep.No.1482, 89th Cong., 2d Sess. (1966). Balancing the effect of the deprivation upon the individual with the governmental-public interest to be served, it appears that the minimal process constitutionally permissible under the circumstances would be an immediate post-suspension hearing. *Cf. Fahey v. Mallonee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947).

■ It is clear from the congressional history that Congress, in passing 12 U.S.C. § 1818, was concerned with the dangerous effect of the public's loss of confidence in financial institutions. Notably, section 1818 was introduced at the request of the regulatory agencies, its purpose being the creation of more effective regulatory powers to deal with crises in financial institutions. 112 Cong.Rec. 10077–84, 20223–48 (1966). The Senate Committee Report stated:

> "Existing remedies have proven inadequate. On the one hand they may be too severe in many situations, such as taking custody of an institution or terminating its insured status. On the other hand they may be so time consuming and cumbersome that substantial injury occurs to the institution before remedial action is effected." *Id.* at 20082.

In order to maintain the public's confidence, Congress agreed with the agencies that immediate action was necessary where a director, officer or employee of an insured

bank was indicted for a felony involving dishonesty or breach of trust. To delay this action, which occurs in the form of a Notice and Order of Suspension, would thus seriously and directly undermine the congressional purpose behind section 1818(g)(1). On the other hand, it is possible that the individual might be seriously harmed by the issuance of a Notice and Order of Suspension. But the degree of harm to the individual is far outweighed by the public interest. Under these circumstances, due process requires that the individual be given an immediate post-suspension hearing.

While the hearing need not be a trial-type hearing,[24] notice, the opportunity to be represented by counsel, for written submissions, and for oral argument, appear mandated by the circumstances. Certainly notice of the right to be heard is essential. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The assistance of counsel is also needed in these cases,[25] particularly since the hearing will involve a complex legal question: whether the crime charged is one involving dishonesty or breach of trust, as well as a question requiring the subtle interrelation of fact and policy: the effect upon the public of the indictees holding office and participating in the affairs of the bank. As to the presentation of live evidence, the "nature of the relevant inquiry," 424 U.S. 343, 96 S.Ct. at 907, does not seem to require any more than written submission.[26] However, oral argument would be necessary. For, the question of whether issuance of a Notice and Order of Suspension in a particular case would further the purpose of the statute in protecting the public's confidence in the financial institutions is a broad and subtle question

---

**24.** Plaintiff's counsel in oral argument conceded that a trial-type hearing would not be required under these circumstances. Defendants did not discuss what would be the minimal due process requirements under the circumstances, choosing to rest on their argument that no hearing is required by the Constitution.

**25.** Since this is a post-suspension hearing, the objection of delay caused by the presence of counsel is not a problem. See *Goldberg v. Kelly,* 397 U.S. at 271, 90 S.Ct. at 1022. How-

ever, the reasons set forth in *Goldberg* for having counsel present are also applicable here. *Id.*

**26.** The agency, of course, might wish to consider hearing live testimony from witnesses at the hearing. If the agency chooses to do so, the opportunity for the individual to cross-examine such witnesses would be required. See 397 U:S. at 270–71, 90 S.Ct. at 1021.

to which "a wide variety of information may be deemed relevant," 424 U.S. at 343, 96 S.Ct. at 907. Given the broad nature of the inquiry and the variety of evidence to be considered, the process must afford the individual the opportunity to effectively correlate the evidence with the inquiry. Oral argument has been traditionally recognized as best serving this function. See *Mildner v. Gulotta*, D.C., 405 F.Supp. 182, 214–15 (Weinstein, J., dissenting). Requiring oral argument here is further supported by the fact that only a few Notice and Order of Suspensions are considered, or even issued, each year.[27] See *United States v. Florida East Coast Railway Co.*, 410 U.S. 224, 245–46, 93 S.Ct. 810, 820–21, 35 L.Ed.2d 223 (1973), explaining *Londoner v. City and County of Denver*, 210 U.S. 373, 385–86, 28 S.Ct. 708, 714, 52 L.Ed. 1103 (1908).

Finally, some statement of the basis for the decision of the agency must be provided. *See* 397 U.S. at 272, 90 S.Ct. at 1022. The reason for providing such a statement is not for purposes of judicial review, since this is precluded by 12 U.S.C. § 1818(i); rather, it is necessary to assure that the agency has complied with the fundamental tenet of due process that the decisionmaker consider the evidence and arguments presented. *Id.* See also *Mildner v. Gulotta*, 405 F.Supp. at 216–17.

■■■ Unlike the other subsections of 12 U.S.C. § 1818,[28] subsection (g)(1) does not provide for any of these minimum due process requirements. The Court must there-

fore find that the statute is repugnant to the Constitution. Where legislation is found to be constitutionally infirm, the infirmity can sometimes be remedied by ordering an agency, using its inherent rule-making power, to promulgate curative regulations. *Doe v. Martin*, 404 F.Supp. 753, 762 (D.D.C.1975). Here, this is impossible, since Congress clearly intended not to provide for a hearing in subsection (g)(1) cases. Thus, the Court is compelled to issue a declaration that the statute is constitutionally infirm, and that the Notice and Order of Suspension issued on February 8, 1974, to plaintiff Bernard Feinberg prohibiting him from participating in the affairs of the Jefferson State Bank of Chicago, Illinois, is unlawful and of no legal force or effect, as well as issue an injunction restraining the defendants from enforcing the Notice and Order of Suspension against the plaintiff.[29]

An Order in accordance with the foregoing will be issued of even date herewith.

### ORDER

In accordance with the Memorandum Opinion of the Court of even date herewith, it is, by the Court, this 13th day of August, 1976,

ORDERED, ADJUDGED, DECLARED AND DECREED, that 12 U.S.C. § 1818(g)(1), insofar as it permits the issuance of a Notice and Order of Suspension without affording the individual minimum due process namely, an immediate post-suspension hearing, preceded by a notice of

---

27. See note 23, *supra*.

28. See 12 U.S.C. § 1818(e), e(8), (f), & (h).

29. In its opinion remanding this case, the court of appeals directed that this court consider the question "whether section 8(i) [section 1818(i)] can withstand constitutional scrutiny insofar as it appears to insulate section 8(g)(1) [section 1818(g)(1)] from any form of judicial review." 522 F.2d at 1343 (footnote omitted). Before this Court, the government has taken the position that section 1818(i) does not insulate section 1818(g)(1) from judicial review as to that section's constitutionality. Since section 1818(i) could be said to be jurisdictional in nature, mere agreement that it does not affect this Court's jurisdiction could not confer jurisdiction if none in fact existed. However, this

Court agrees with the defendants that section 1818(i), both by its language and legislative purpose, only insulates the basis for issuance of a Notice and Order of Suspension from judicial review, and not section 1818(g)(1) itself. As the defendants point out, the legislative history of this section clearly indicates that the only concern in including section 1818(g)(1) was to have the Notice and Order of Suspension go into effect unhampered by judicial intervention; its intent was not to preclude judicial review of the constitutionality of the statute. To the extent it conflicts with this conclusion, *Hykel v. Federal Savings and Loan Insurance Corp.*, 317 F.Supp. 332 (E.D.Pa.1970) (three-judge court) is inapposite.

such a right, and consisting of the opportunity to be represented by counsel, to make written submissions, and make oral argument, violates the fifth amendment of the Constitution of the United States; and it is

FURTHER ORDERED, ADJUDGED, DECLARED AND DECREED, that the Notice and Order of Suspension issued by the Federal Deposit Insurance Corporation on February 8, 1974, prohibiting Bernard Feinberg, plaintiff herein, from participating in any manner in the conduct of the affairs of the Jefferson Street Bank, Chicago, Illinois, is unlawful, null and void; and it is

FURTHER ORDERED, ADJUDGED, DECLARED AND DECREED, that the defendant Federal Deposit Insurance Corporation, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with the defendant be, and the same hereby are, enjoined from enforcing the Notice and Order of Suspension issued by the defendant Federal Deposit Insurance Corporation on February 8, 1974, against Bernard Feinberg, plaintiff herein.