**ROSLINDALE COOPERATIVE BANK et al.**

v.

**Carol GREENWALD et al.**

**Civ. A. No. 78–111–Z.**

United States District Court,
D. Massachusetts.

Dec. 7, 1979.

750

Robert H. Tobin, Roslindale, Mass., for plaintiffs.

Thomas V. Urmy, Jr., Warner & Stackpole, Boston, Mass., for Cooperative Central Bank.

Andrew J. McElaney, Asst. Atty. Gen., Boston, Mass., for Greenwald and Flynn.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Roslindale Cooperative Bank and eleven of its directors and shareholders bring this civil rights action pursuant to 42 U.S.C. § 1983 charging the Massachusetts Commissioner of Banks and others with violations of Fourteenth Amendment due process guarantees. The several defendants named in the complaint are Carol S. Greenwald, former Massachusetts Commissioner of Banks and her successor in office, Gerald T. Mulligan; Edward T. Flynn, Deputy Commissioner of Banks; Cooperative Central Bank (Central Bank), the reserve bank for Massachusetts cooperative banks, and Central Bank's board of directors; and the Attorney General, State Treasurer, and Commissioner of Revenue.

Plaintiffs' amended complaint concerns essentially two series of events. On October 28, 1977, Greenwald, pursuant to Mass. Gen.Laws ch. 170 App., § 2–4, certified to Central Bank that it appeared to her "unsafe and inexpedient" for Roslindale Cooperative Bank (the Bank) to continue to transact its business. In response to the certification, Central Bank took possession and control of the Bank's property and business and assumed plaintiff directors' managerial responsibilities. Plaintiffs did not learn of Greenwald's certification until November 2, 1977 when they received a letter from Central Bank simultaneously informing them of Greenwald's action and Central Bank's intervention. The Bank, to this day, remains under the control of Central Bank.

The second series of events began approximately one year later, when Greenwald, pursuant to Mass.Gen.Laws ch. 167, § 5, initiated administrative proceedings to remove four of the plaintiffs, Albert G. Tobin, Robert H. Tobin, Leonard F. DeLosh, and James Quinn, from the Bank's board of directors. Plaintiffs allege that at a show cause hearing conducted by Greenwald, they appeared to answer charges of professional misconduct. The charges were presented by Deputy Commissioner Flynn. As required by ch. 167, § 5, the hearing also was attended by a three-member board consisting of designees of the Attorney General, State Treasurer, and Commissioner of Revenue. At the conclusion of the hearing, Greenwald ordered removal of the directors. The board, though empowered by statute to do so, did not overrule her decision.[1] Plaintiffs bitterly criticize the manner in which the hearing was conducted alleging, *inter alia*, that they were not notified of the specific charges they would be expected to refute and that only one of the four was permitted to speak in his own behalf.

The Bank and its directors and shareholders now seek compensatory and punitive damages, an injunction ordering return of

---

1. The board does not have full powers of review but simply has the limited statutory authority to reverse the Commissioner's order by a majority vote of its members. Mass.Gen.Law ch. 167, § 5.

the Bank's property and business to the directors' control, and a declaration that ch. 170 App., § 2–4, the certification statute, is unconstitutional, as well as other relief, arguing they were denied their constitutional rights to notice and a hearing on the advisability of certification. The removed directors claim they are entitled to compensatory and punitive damages, and reinstatement, because of allegedly unconstitutional defects in the removal proceedings, and a declaration that ch. 167, § 5, the removal statute, is unconstitutional. The defendants have moved to dismiss the complaint for failure to state a claim. Fed.R.Civ.P. 12(b)(6).

*Certification*

■ Defendants argue that plaintiffs have no "liberty" or "property" interests which would entitle them to the procedural safeguards guaranteed by the Due Process clause. I disagree. Certification removed the Bank's assets and placed them under the control of Central Bank. Clearly the Bank has a property interest in its assets. Moreover, defendants' argument that the Bank as a creature of the state is not entitled to maintain a § 1983 action is not a correct statement of the law. *Advocates for Arts v. Thompson,* 532 F.2d 792, 794 (1st Cir. 1976); *Pennsylvania Bank and Trust Co. · v. Hanisek,* 426 F.Supp. 410, 412–13 (W.D.Pa.1977).[2]

■ Plaintiffs, as shareholders, also have property interest adequate to sustain their claims. Since certification, the shareholders' duly-elected board of directors have not been in control of the Bank, and as the complaint further alleges defendants have ignored the operative effect of two shareholder votes. Under these circumstances, the shareholders are entitled to due process

protection. See, *Feinberg v. Federal Deposit Ins. Corp.,* 173 U.S.App.D.C. 120, 125, 522 F.2d 1335, 1340 (D.C.Cir.1975); *Feinberg v. Federal Deposit Ins. Corp.,* 420 F.Supp. 109, 115 (D.D.C.1976) (where a holder of shares in a state bank was held entitled to due process). But see, *Smith v. Witherow,* 102 F.2d 638 (3d Cir. 1939) (where holders of national banking shares were denied constitutional protection in light of express statutory conditions imposed upon their ownership interests).

■ Whether the directors have a constitutionally protectible property interest · must be determined by reference to state law. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Bishop v. Wood,* 426 U.S. 341, 345–46, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Similarly, the existence of a liberty interest in the directorships depends upon state law. *Paul v. Davis,* 424 U.S. 693, 709–710, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Under Massachusetts law, a bank director may be removed for official delinquencies only after notice and an opportunity to refute the charges of impropriety. *Tobin v. Commissioner of Banks,* 386 N.E.2d 1246, 1248 (1979); Mass.Gen.Law ch. 167, § 5. A Massachusetts bank directorship does, therefore, constitute an interest which if denied contrary to due process requirements would entitle plaintiffs to relief.

■ The next question to be resolved is whether plaintiffs' respective constitutional interests are adequately safeguarded by procedures available to them under state law and this question must be answered affirmatively. The potentially drastic effects of bank failure or mismanagement justify unfettered freedom of state action

---

2. I also disagree with defendants that the directors lack standing to maintain this action in behalf of the Bank. Relying on *Vigilante v. Old South Trust Co.,* 251 Mass. 385, 387–388, 146 N.E. 670 (1925), defendants argue that only Central Bank can authorize litigation in the name of a certified member bank. It does not necessarily follow, however, that the directors should be precluded from instituting a civil rights action in the name of the Bank for deprivations of its constitutional interests. See, *Fa-*

*hey v. Mallonee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1945). Indeed, as the Supreme Judicial Court has indicated, the fact that *Vigilante* applies to all of the *business* affairs of a certified bank does not preclude the board of directors from challenging a certification decision by means of a suit for declaratory or injunctive relief. *Tobin v. Commissioner of Banks,* —— Mass. ——, 386 N.E.2d 1246, 1248, n.3 (1979).

and warrant no requirement of a pre-certification hearing either with respect to the Bank, see *Fahey v. Mallonee, supra,* or the shareholders, *Feinberg v. Federal Deposit Ins. Corp., supra,* 420 F.Supp. at 119–120. Post-certification relief is a different matter, however, although it may clearly be cast in a form which accommodates the regulatory concerns of the Commonwealth as well as the respective interests of the Bank, *Fahey v. Mallonee, supra,* and its shareholders, *Feinberg v. Federal Deposit Ins. Corp., supra,* 420 F.Supp. at 119–120. The availability of equitable relief under Mass.Gen.Laws ch. 231A, see *Tobin v. Commissioner of Banks, supra,* 386 N.E.2d at 1248, n.3, meets all the requirements of due process in the context of bank certification. As the Supreme Judicial Court indicated in *Lowell Co-Operative Bank v. The Co-Operative Central Bank,* 287 Mass. 338, 191 N.E. 921 (1934), certification powers are delegated to the Commissioner by the legislature and are not subject to judicial review except to the extent of determining whether the Commissioner exceeded the statutory bounds of her authority. The language in ch. 170 App., § 2–4, providing that the Commissioner may certify a bank only if she finds that it is in "an unsound or unsafe condition" or that it is "unsafe and inexpedient" for the bank to continue its business refers to commonly accepted banking standards which afford a reviewing court sufficiently precise means for evaluating the Commissioner's action. *Fahey v. Mallonee, supra,* 332 U.S. at 252–53, 67 S.Ct. 1552.[3]

■ A further reason compels dismissal of the claims of plaintiff directors arising out of certification of the Bank.[4] As both the complaint and the certification statute indicate, Greenwald's action with respect to the Bank did not terminate plaintiffs' directorships. It is still possible that the Bank's business will be restored to the full managerial powers of its directors. Indeed, it appears from the complaint that steps toward this end have been taken. In the absence of a conclusive termination of status, plaintiff directors cannot argue that they have been denied their constitutional rights. *Board of Regents v. Roth, supra ; Paul v. Davis, supra,* 424 U.S. at 701–12, 96 S.Ct. 1155.

■ With respect to Central Bank and its directors, the complaint fails for an additional reason. All discretionary powers exercisable in connection with bank certifications are vested in the Commissioner of Banks who alone has the statutory authority to certify banks, permit resumption of normal operations, or order liquidation. Mass.Gen.Laws ch. 170 App., §§ 2–4, 2–5. Section 1983 imposes liability only on those persons who subject others, or by their actions cause such others to be subjected, to constitutional injuries. 42 U.S.C. § 1983 (1974). The role of Central Bank and its directors in this statutory scheme is purely ministerial: upon notification from the Commissioner that one of its member banks has been certified, Central Bank must intervene and must retain control of the certified member bank until further action by the Commissioner. The concentration of all discretionary powers in the Commissioner removes Central Bank and its board of directors from liability for damages under § 1983. See e. g., *Mims v. Board of Education,* 523 F.2d 711, 715 (7th Cir. 1975).

■ Plaintiffs' attempt to attribute liability to Deputy Commissioner Flynn is similarly misdirected. No allegations appear in the complaint to suggest that Flynn's role in these events exceeded the bounds of his ministerial functions, therefore, he also is absolved of liability. *Mims v. Board of Education, supra.*

---

3. The certification standards are also neutral and impose no statutory imprimatur of personal dishonesty such as that which triggered the requirement of a hearing in *Feinberg v. Federal Deposit Ins. Corp.,* 420 F.Supp. 109 (D.D.C. 1976) and *Rodriguez de Quinonez v. Perez,* 596 F.2d 486 (1st Cir. 1979).

4. Clearly, different issues are raised by the four directors who were formally removed pursuant to the ch. 167 procedures which, of course, are wholly separate and independent from certification procedures under ch. 170. See discussion *infra.*

*Removal of Directors*

 The only issues with respect to the removed directors, are whether ch. 167, § 5 was applied to them in an unconstitutional manner and, if so, whether they are entitled to relief against any of the defendants. The statute itself satisfies due process requirements by guaranteeing notice and a hearing to bank directors charged with professional malfeasance, *Rodriguez de Quinonez v. Perez*, 596 F.2d 486 (1st Cir. 1979), but if, as the complaint alleges, the show cause hearing was conducted in a way which effectively denied the removed directors an opportunity to refute such charges, they would be entitled to relief, *Codd v. Velger*, 429 U.S. 624, 626–27, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977); *Rodriguez de Quinonez v. Perez, supra*, at 490–91.

 Insofar as the removed directors seek damages from Greenwald, their claim is circumscribed by the doctrine of qualified immunity of executive department officials. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). This immunity extends to all official acts which have a reasonable basis in light of all the circumstances existing at the time action was taken, including the scope of official discretion, and which are the product of a good faith effort to discharge official responsibilities. *Id.*, at 247–48, 94 S.Ct. 1683. If, however, an executive official acts without reason and for the purpose of causing injury to plaintiff, the cloak of immunity is withdrawn, and the official may be charged with monetary liability. *Id.*

 The rule in this circuit is that a § 1983 plaintiff must plead as well as prove facts showing bad faith. *Gomez v. Toledo*, 602 F.2d 1018, 1020 (1st Cir. 1979). The removed directors' assertions that they were denied notice and an effective opportunity to speak at their show cause hearing raise at least an inference of bad faith sufficient to meet their burden of pleading and to defeat Greenwald's motion to dismiss the complaint.

 Defendant Flynn's alleged wrongful actions against plaintiffs pertain to his participation in the decision to initiate the removal proceedings and for his prosecutorial role at the show cause hearing. He is absolutely immune from liability. *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 2915, 57 L.Ed.2d 895 (1978). Plaintiffs' allegations of conspiratorial liability, both as to Flynn and the other defendants, lack merit. *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Harrison v. Brooks*, 519 F.2d 1358 (1st Cir. 1975).

 The liability of the Attorney General, State Treasurer, and Commissioner of Revenue rests on the sole allegation that, as members of the board constituted by ch. 167, § 5, they did not reverse Greenwald's order of removal. The board's statutory power to reverse an order of the Commissioner does not make them guarantors of constitutional rights. Under the statute, the Commissioner bears responsibility for the conduct of the hearing; therefore, within the limits permitted by qualified executive immunity, she alone is accountable for constitutional defects in the proceedings. The role of the board is restricted to the merits of a removal decision—as to which there is a right of judicial review in state court—and affords no basis for a constitutional claim. The complaint as to the board members, therefore, is groundless and may be dismissed.

 Four plaintiffs charge violations of their rights as a result of certain actions by defendant Mulligan. The complaint alleges that on June 25, 1979, Mulligan met with four of the plaintiff directors pursuant to Mass.Gen.Laws ch. 167, § 2A which empowers the Commissioner of Banks to issue orders to bank directors concerning banking operations. Plaintiffs who were summoned to the § 2A meeting, Beneditto A. Faletra, Jr., Charles Janotta, Harold T. Hourihan, and Joseph F. Marcantonio, claim Mulligan deprived them of due process, because, for example, he refused their requests to have counsel present. There is nothing in the complaint, however, to indicate that the § 2A meeting implicated any of the constitutional interests to which due process attaches. Indeed, it appears from the com-

plaint that the meeting was part of a plan to accomplish the eventual return of the Bank to its board of directors. Plaintiffs may take issue with Mulligan's judgment concerning the manner in which the return will happen, but this does not rise to the level of a constitutional claim.

*Disposition*

Defendants' motions to dismiss for failure to state a claim are allowed except that Greenwald's motion is denied as to claims made by Albert G. Tobin, Robert H. Tobin, Leonard F. DeLosh, and James Quinn in connection with the ch. 167, § 5 removal proceedings.