Clinton MANGES, Plaintiff-Appellant,

v.

William B. CAMP et al., Defendants-Appellees.

No. 72–1962.

United States Court of Appeals,
Fifth Circuit.

March 1, 1973.

Jack Skaggs, James Harris Denison, Jr., Harlingen, Tex., for plaintiff-appellant.

William S. Sessions, U. S. Atty., San Antonio, Tex., Walter H. Fleischer, Anthony J. Steinmeyer, Dept. of Justice, Washington D. C., Ralph Langley, Emerson Banach, Jr., San Antonio, Tex., for defendants-appellees.

Before JOHN R. BROWN, Chief Judge, and THORNBERRY and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Clinton Manges, owner of controlling interest in the stock of The Groos National Bank, received an order on March 4, 1971, from the Comptroller of the Currency of the United States, prohibiting Manges "from further participation in any manner in the conduct of the affairs of The Groos National Bank". Manges filed suit in the district court below seeking a permanent injunction against the Comptroller from continuing this order in force. The district court dismissed the suit for want of jurisdiction due to 12 U.S.C. § 1818(i), a withdrawal statute. This case involves appeal of that dismissal.

This court has determined that jurisdiction does lie in this specific case, that the withdrawal statute is not applicable here, and that the Comptroller acted outside of his proper statutory authority.

## FACTS

On October 8, 1965, Clinton Manges was convicted upon his plea of guilty to the charge of making a false statement to the Small Business Administration, in violation of 15 U.S.C. § 645. Manges was sentenced to pay a fine of Two Thousand Five Hundred ($2,500.00) Dollars, and he did so pay on October 11, 1965. In December of 1970, Manges began purchasing shares of the common stock of The Groos National Bank of San Antonio, Texas. By February 2, 1971, he had obtained controlling interest of the Bank's common stock. Manges reported this acquisition to the Comptroller of the Currency on February 14, 1971, along with other required information concerning his background. The 1965 conviction was included in that information. Manges, on February 16, 1971, presented written requests to the Bank's Board of Directors asking them to pass certain resolutions. The Board took no action.

The Comptroller of the Currency then issued the order of March 4, 1971, which prohibited Manges from participating in any manner in the conduct of the affairs of the Bank.[1] A copy of the order was sent to Manges and to The Groos National Bank. Pursuant to this order, the Bank (the Board of Directors) refused Manges' participation in its affairs and prevented him from voting his stock. Manges, in July of 1971, requested that the Comptroller clarify the order of March 4, 1971. The Comptroller acknowledged Manges' request and said nothing.

This case was commenced December 20, 1971, when Manges requested that the Comptroller be permanently enjoined from continuing in force and effect his order of March 4th. Manges further requested that a preliminary injunction be issued against the Board of Directors of The Groos National Bank preventing them from taking any action to his financial detriment as concerns control of said Bank. The district court dismissed, basing its decision on 12 U.S.C. § 1818(i), a withdrawal statute.

1. 12 U.S.C. § 1818(g)(1).

## ISSUES

Manges, on appeal, not only contends that the Comptroller was acting beyond the scope of his authority in 12 U.S.C. § 1818(g)(1), but he also attacks the constitutionality of 12 U.S.C. § 1818(h)(2) and § 1818(i), as violative of the due process and equal protection guarantee of the Fifth Amendment. Manges further states that judicial review of this statute should be allowed and cannot be excluded in this situation. These contentions should not be taken lightly.[2] If Manges' claims are true, then he has suffered grievous harm due to the action by the Comptroller of the Currency, possibly in violation of the United States Constitution. The government naturally asserts that the Comptroller was acting well within his designated authority under the statute and was in no way violating any of Manges' guaranteed rights. This court, therefore, feels careful scrutiny of the statute in question and the intent behind it is demanded.

## JURISDICTION

This court, however, upon reading 12 U.S.C. § 1818(h)(2) and § 1818(i), is not so convinced that the Comptroller was within his designated statutory authority. Further, if the Comptroller was not acting within his authority granted by Congress, then 12 U.S.C. § 1818(i) could not withdraw jurisdiction.

██ There is, however, a very strong court created exception to withdrawal statutes. This exception comes into play when there has been a clear departure from statutory authority, and thereby exposes the offending agency to review of administrative action otherwise made unreviewable by statute.

Two recent decisions by the Supreme Court give concrete support to the concept that a clear departure from designated authority demands judicial review. In Oesterich v. Selective Service System, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), a draft board granted a divinity student exemption from military service as provided for by law. Then the board revoked this exemption and ordered the student inducted due to conduct unrelated to the granting or continuing of that exemption. The Military Selective Service Act of 1967 provided that there would be no pre-induction judicial review of the classification or processing of the registrant. The Supreme Court held that the draft board clearly departed from its statutory mandate and acted in a lawless manner. Supra at 238, 89 S.Ct. 414. Justice Douglas stated on behalf of the Court that concerning the statute itself "[n]o one, we believe, suggests that § 10(b)(3) [withdrawal section of the statute] can sustain a literal reading . . . Examples are legion where literalness in statutory language is out of harmony either with constitutional requirements or with an Act taken as an organic whole." (citations omitted). Supra at 238, 89 S.Ct. at 417.

Also, in Breen v. Selective Service System, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970), under similar facts, the Court once again ruled that a clear departure from statutory mandate was present and justified judicial review. Supra at 467, 90 S.Ct. 661. Justice Harlan in his concurrence was careful to point out that the Court's judicial scrutiny of Breen's legal contention, unlike review of factual and discretionary decisions, in no way hindered the function of the Selective Service System which was the primary concern of Congress in enacting this withdrawal section. Supra at 468, 90 S.Ct. 661.

The question then before this court is whether or not the Comptroller acted

---

2. This court is following the recommendation of the United States Senate " . . . the power to suspend or remove an officer or director of a bank or savings and loan association is an extraordinary power, which can do great harm to the individual affected . . . it must be strictly limited and carefully guarded." 112 Cong.Rec. 20083 (1966).

within the scope of his authority as Congress so intended it to be.

The precise language of 12 U.S.C. § 1818(g)(1) states "Whenever any . . . person participating in the conduct of the affairs of such bank, is charged in any information, indictment, or complaint authorized by a United States attorney, with the commission of or participation in a felony involving dishonesty or breach of trust, the appropriate Federal banking agency may, by written notice served upon such . . . person . . . prohibit him from further participation in any manner in the conduct of the affairs of the bank. A copy of such notice shall also be served upon the bank. Such suspension and/or prohibition shall remain in effect until such information, indictment, or complaint is finally disposed of or until terminated by the agency." This language, on its face, certainly appears to speak to the present tense, that is to say, it speaks to the situation where a person is presently involved and participating in the affairs of a bank and is presently charged with a felony. The Comptroller has asserted this language was intended to go not only to the present, but also to any past felony charges or convictions that might have occurred as regards Manges.

■ Because what has occurred, on its face, appears highly suspect as regards the safeguarding of individual rights guaranteed under the Constitution, this court must seek the precise intent Congress had in promulgating this legislation.[3]

After reviewing carefully the legislative history concerning this Act there can be no doubt that Congress never intended to establish a procedure such as the one utilized here by the Comptroller, H.R.Rep. 2077, 89th Cong., 2nd Sess., 1966; S.Rep. 1482, 89th Cong., 2nd Sess., 1966, U.S.Code Cong. & Admin. News 1966, p. 3532; 112 Cong.Rec. 24980–25026 (1966); 112 Cong.Rec. 20077–20248 (1966). Further, if the Comptroller's argument were taken as true and this statute were to operate as the Comptroller asserts, then this could be the only section of the statute whereby judgment of one individual was in no way reviewable by any court or administrative procedure.

■ This court at no time has overlooked the intent of Congress to provide safeguards to ensure that the public and financial institutions shall not be subject to loss due to infiltration by criminal or dishonest elements. There are other provisions of this statute that not only safeguard the institutions involved, but also appear to provide adequate procedural safeguards to guarantee that no individual shall have his rights violated due to the arbitrary action of one individual or even the arbitrary action of a group of individuals. It should be noted that 1818(g)(1) is the only section that could possibly subject a person to possible arbitrary and capricious judgment of one individual. No other section of the statute has such a provision. In all other situations judgment as to fitness as regards the criminal background of an individual resides in the collective judgment of a number of individuals rather than in a single person. What Congress did intend in promulgating 1818(g)(1) was to routinely eliminate any person who is convicted or charged with a felony involving a breach of trust while he

3. Manges has been deprived of effective ownership of several million dollars worth of stock without notice, hearing, or any judicial review or administrative procedure other than the decision of one man, the Comptroller of the Currency. This is clearly not allowable under our present system of constitutional government. In Joint Anti-fascist Refugee Comm. v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 647, 95 L.Ed. 817 (1951), (concurring opinion) Justice Frankfurter stated that essential to due process of law is "the right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction." Where tangible property is taken, either directly or indirectly, there is no doubt that the opportunity for hearing must exist. Londoner v. Denver, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103 (1908).

is at the same time participating in the affairs of a national bank.[4]

This routine removal, however, cannot be the case with Clinton Manges. If this section did apply to Clinton Manges, then logically any person in the United States who has ever been convicted of a felony and who also owns stock in a national bank could be deprived of effective ownership of that stock by the unreviewable order of a single government administrator.

This court notes that the draft of the original bill was amended so as to provide that the Federal Reserve Board and not a single individual should be designated with removal powers as regards national bank officials. The Senate Committee on Banking and Currency reported to the full Senate that:

> The duty and responsibility of suspending or removing bank officials is a quasi-judicial function of the highest delicacy, requiring the most careful balancing of the interests of the institutions and officials involved, on the one hand, and the interest of the depositors, savers, borrowers, and the Government and the public generally on the other hand. To permit suspensions and removals without thorough consideration would be unfair to the institutions and officers involved. Any procedure which would permit this would have a harmful effect on the banking system itself and on depositors, borrowers and the public. S.Rep.No.1432, 89th Cong., 2 Sess., page 3, (1966), U.S.Code Cong. § Admin.News 1966, p. 3540.

Although this refers to bank officials, certainly a person owning controlling interest in a bank should be within the purview of this concept.

This construction of the statute then properly avoids serious constitutional questions raised herein by appellant Manges relating to the lack of any hearing. By this decision, we do not in any way comment on any of the possible constitutional issues involved in this suit or any constitutional issues that may be raised as pertains to this statute in later suits.

■ This court then finds that the Comptroller was not acting within the scope of his proper authority under 1818(g)(1), thus, exposing himself to judicial review under the doctrine of *Oesterich* and *Breen,* supra. This case also involves a clear departure from statutory authority though not as obvious on its face as in the Selective Service cases above. There can be no doubt after considering the intent and purpose Congress had in promulgating this legislation that this court should and does have jurisdiction in this specific situation.

■ It is the order of this court that the judgment below be reversed and the injunction granted as to the Comptroller of the Currency of the United States prohibiting him from acting under Section 1818(g)(1) as to Clinton Manges. This action then of the Comptroller being void and of no effect can no longer serve as authority for the Directors of The Groos National Bank to refuse Manges' participation in the affairs of that bank.[5] Therefore, an injunction will lie as to those Directors if they refuse Manges' participation, basing their action upon that order of the Comptroller. The order of the lower court dismissing the suit by Clinton Manges against the Comptroller of the Currency of the United States is

Reversed and remanded for proceedings not inconsistent with this opinion.

---

4. Evidence of this specific intent to routinely remove persons charged with a felony is substantiated by Senator Proxmire in his discussion of another section of this statute. 112 Cong.Rec. 20245 (1966).

5. This court has found that there is a common nucleus of operative fact in this case and, therefore, pendent jurisdiction as to The Groos National Bank and its directors clearly exists. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).