**UNITED STATES of America, Plaintiff-Appellant,**

v.

**ADAMO WRECKING CO., Defendant-Appellee.**

**No. 75–1967.**

United States Court of Appeals, Sixth Circuit.

Argued June 15, 1976.

Decided Nov. 1, 1976.

Philip VanDam, U. S. Atty., Detroit, Mich., John J. Zimmerman, Edmund B. Clark, Jacques B. Gelin, Peter R. Taft, Land & Natural Resources Div., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

John E. Scott, Wiley Y. Daniel, Dickinson, Wright, McKean, Cudlip & Moon, Detroit, Mich., Burton Y. Weitzenfeld, Stanley M. Lipnick, Arthur L. Klein, Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill., for defendant-appellee.

Before PHILLIPS, Chief Judge, and EDWARDS and PECK, Circuit Judges.

EDWARDS, Circuit Judge.

The United States appeals from dismissal without trial of a criminal indictment against defendant Adamo Wrecking Company. The first issue presented by this case is whether or not either the District Court

or this court had or has jurisdiction to review an "emission standard" adopted as a regulation under the Clean Air Act, 42 U.S.C. § 1857 (1970). The second issue (if it is reached) is whether or not 40 C.F.R. § 61.22 (1975), which is quoted below, is or is not "an emission standard" within the meaning of 42 U.S.C. § 1857c–7 (1970):

> § 61.22 Emission Standard . . .
>
> (d) Demolition: Any owner or operator of a demolition operation who intends to demolish any institutional, commercial, or industrial building (including apartment buildings having more than four dwelling units), structure, facility, installation, or portion thereof which contains any boiler, pipe, or load-supporting structural member that is insulated or fireproofed with friable asbestos material shall comply with the requirements set forth in this paragraph.
>
> ·*       *       *       *       *       *
>
> (2) The following procedures shall be used to prevent emissions of particulate asbestos material to outside air:
>
> (i) Friable asbestos materials, used to insulate or fireproof any boiler, pipe, or load-supporting structural member, shall be wetted and removed from any building, structure, facility, or installation subject to this paragraph before wrecking of load-supporting structural members is commenced. Boilers, pipe, or load-supporting structural members that are insulated or fireproofed with friable asbestos materials may be removed as units or in sections without stripping or wetting, except that where the boiler, pipe, or load-supporting structural member is cut or disjointed, the exposed friable asbestos materials shall be wetted adequately to insure that such debris remains wet during all stages of demolition and related handling operations.

40 C.F.R. § 61.22(d)(2)(i) (1975).

The importance of the emission standard question becomes obvious when we consider three provisions of the Clean Air Act. The first provision makes any violation of an emission standard a criminal act. *See* Section 113 (42 U.S.C. § 1857c–8(c)). The second provides:

> (c)(1) After the effective date of any emission standard under this section—
>
> *       *       *       *       *       *
>
> (B) no air pollutant to which such standard applies may be emitted from any stationary source in violation of such standard. . . . Section 112(c)(1)(B) of the Act, 42 U.S.C. § 1857c–7(c)(1)(b) (1970).

The third provision provides for petitions for "review of action of the Administrator in promulgating" any emission standard under "§ 1857c–7" to be "filed only in the United States Court of Appeals for the District of Columbia" within specified time limits, and flatly prohibits "judicial review in . . . criminal proceedings for enforcement." Section 307(b) of the Clean Air Act, 42 U.S.C. § 1857h–5(b) (1970), provides in full:

> (b)(1) *A petition for review of action of the Administrator in promulgating* any national primary or secondary ambient air quality standard, *any emission standard under section 1857c–7 of this title*, any standard of performance under section 1857c–6 of this title, any standard under section 1857f–1 of this title (other than a standard required to be prescribed under section 1857f–1(b)(1) of this title), any determination under section 1857f–1(b)(5) of this title, any control or prohibition under section 1857f–6c of this title, or any standard under section 1857f–9 of this title *may be filed only in the United States Court of Appeals for the District of Columbia.* A petition for review of the Administrator's action in approving or promulgating any implementation plan under 1857c–5 of this title or section 1857c–6(d) of this title, or his action under section 1857c–10(c)(2)(A), (B), or (C) of this title or under regulations thereunder, may be filed only in the United States Court of Appeals for the appropriate circuit. Any such petition shall be filed within 30 days from the date of such promulgation, approval, or action, or after such date if such petition is based

solely on grounds arising after such 30th day.

(2) *Action of the Administrator with respect to which review could have been obtained under paragraph (1) shall not be subject to judicial review in civil or criminal proceedings for enforcement.*
(Emphasis added.)

We must consider still another portion of this record before we can turn toward a reasoned decision. The dismissed first count[1] of the indictment read:

COUNT ONE

On or about the 19th day of February, 1974, at 2612 Carter Street, also known as 8751 Linwood Street, in the City of Detroit, County of Wayne, within the Eastern District of Michigan, ADAMO WRECKING COMPANY, the defendant herein did knowingly cause the emission of asbestos from a four and one-half story commercial masonry building at the aforementioned location by failing to wet and remove firable [sic] [friable] asbestos material, used to insulate and fireproof a boiler in the basement of said building, before demolition of the load-supporting structural supports had begun; in violation of Title 42, United States Code, Section 1857c–7(c)(1)(B), and the rules and regulations promulgated thereto, 38 F.R. 8829 (April 6, 1973), 40 C.F.R. § 61.22(d)(2)(i).

Appellee phrases the appellate question in this case as follows:

Whether the trial court correctly dismissed Count I of the superseding indictment for its incurable failure to allege an essential element of the crime purportedly charged therein.

Plainly, however, the indictment does charge that defendant Adamo "did knowingly cause the emission of asbestos" by failing to wet friable asbestos before demolition. Hence appellee's question only makes sense when its brief explains that it does not consider the regulation, 40 C.F.R. § 61.22 to be "an emission standard" within

the meaning of the Act. And, indeed, the District Judge found that 40 C.F.R. § 61.22 was not an emission standard.

Before turning to his reasons for taking that point of view, however, we note that preliminary thereto he rejected appellee's argument that the indictment was facially defective in failing to charge an essential element:

Inasmuch as there is no particular magic in the use of verbatim statutory language, it is not a requisite for sufficiency. As the Sixth Circuit explained in *Rudin v. U. S.*, 254 F.2d 45, 48 (1958), cert. den. 357 U.S. 930 [78 S.Ct. 1374, 2 L.Ed.2d 1371]:

"It is, of course, settled law that in order for an indictment to be valid it must allege all of the elements which are necessary to constitute a violation of the statute. *But it is not necessary that the indictment follow the exact wording of the statute.*" (Emphasis added).

The test is whether the language used "plainly describes each element," (*Glenn v. U. S.*, 303 F.2d 536, 538 (5th Cir. 1962), cert. den. 372 U.S. 920, [83 S.Ct. 734, 9 L.Ed.2d 725]) so that it apprises defendant of what he must be prepared to meet (*Rudin, supra*, at 48). In the words of one recognized commentator:

"The fundamental purpose of the pleading is to inform the defendant of the charge so that he may prepare his defense, and the test for sufficiency ought to be whether it is fair to defendant to require him to defend on the basis of the charge as stated in the particular indictment * * *. The stated requirement that every ingredient or essential element of the offense should be alleged must be read in the light of the fairness test just suggested. (*Wright, supra*, [1 C. Wright, Federal Practice and Procedure § 125, at 233–34 (1969)]; see also *U. S. v. Berlin,*

---

1. The second count of the indictment which alleges a false report is not involved in this appeal.

*Richman and Denmon, supra,* [*United States v. Berlin,* 472 F.2d 1002 (2d Cir. 1973); *United States v. Richman,* 369 F.2d 465 (7th Cir. 1966); *United States v. Denmon,* 483 F.2d 1093 (8th Cir. 1973)] in support of that basic test)."

The instant indictment fulfills that function. Rather than simply adverting to the statute, it virtually quotes the regulation which embodies the standard. In so doing, it alleges that the emission charged is traceable to a violation of the standard, more specifically, to a failure to wet and remove the material as a prelude to demolition.

The indictment charges that defendant:

" * * * did knowingly *cause the emission of asbestos* from a four and one-half story commercial masonry building at the aforementioned location *by failing to wet and remove firable [sic] [friable] asbestos material, used to insulate and fireproof a boiler in the basement of said building, before demolition* of the load-supporting structural supports *had begun* * * * " (Emphasis added).

The emission charged is directly attributable to the failure to wet and remove the asbestos prior to demolition. The indictment alleges that defendant caused the emission *by* failing to wet and remove "before demolition had begun." Use of the tense "had begun" indicates that demolition was commenced thereafter. Thus, the substance of the element is present, in some detail. Substitution of the more specific language of a regulation intended to define a statutory term, in the place of that term, is certainly adequate to apprise defendant of the charge and the nature of the cause against it. (*Russell, supra* [*Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1961)], *U. S. v. Marra,* 481 F.2d 1196 (6th Cir. 1973).)

In reaching its decision this Court does not perceive any conflict with the analysis adopted by prior judicial determinations.[9] In the cases relied upon by de-

[9] Similar challenges have been posed successfully in: *U. S. v. Nat. Wrecking Co.,* 74 CR 755 (N.D.Ill.1975); *U. S. v. Nardi Wrecking Co.,* 74 CR 756 (N.D.Ill.1975); *U. S. v. Harvey Wrecking Co.,* 74 CR 758 (N.D.Ill.1975); *U. S. v. Brandenberg Demolition Co.,* 74 CR 757 (N.D.Ill.1975), hereinafter "Illinois cases."

fendant, the indictments not only failed to state the key statutory terminology, but also failed to correct the omission with other acceptable language. Thus, the courts felt confronted by the need to presume one essential element from allegations of another. Such a presumption is not required in the instant case, inasmuch as the element may be found within the four corners of the indictment. Accordingly, defendant's argument to the contrary must be rejected.

We agree with this reasoning and adopt it for the purposes of this appeal.

The District Judge next turned to consideration of the government's claim that Section 307(b) of the Act (42 U.S.C. § 1857h–5) deprived the District Court of jurisdiction to entertain the present attack upon the regulation. Finding in Section 307(b) an ambiguity which he resolved in favor of jurisdiction, the District Judge proceeded to examine the regulation and to hold it invalid.

We disagree with the District Judge's conclusion as to jurisdiction and hence we have no need to deal with validity of the emission standard.

The District Judge reasoned that the word "promulgating" may be read as applying more to procedure than to substance and hence that the prohibition on review of an emission standard under Section 307(b)(2) does not prohibit an attack on the validity of the standard as opposed to an attack upon the procedures by which it was enacted.

The construction adopted by the District Judge appears to us to raise more questions than it answers. If review of the substance of national emission standards is not provided for in § 307(b)(1) where is it provided for? Would Congress have intended to leave review of the validity of a national

emission standard to District Court enforcement proceedings in fifty states with the high probability of many conflicting interpretations? Why would Congress ban review of procedure in District Court enforcement proceedings and allow District Court review of substance when clearly the latter is more likely to occasion a greater diversity of District Court opinions and a consequent greater confusion concerning the meaning of the standard and its enforcement? We find no satisfactory answer to these questions under the District Judge's interpretation.

On the other hand, we believe that the language "action of the Administrator in promulgating" can more readily be taken to apply to both the procedures by which it was adopted and the substance of the regulation. This clearly is the view taken of the matter by the D. C. Circuit in *Oljato Chapter of Navajo Tribe v. Train*, 169 U.S.App. D.C. 195, 515 F.2d 654 (1975), where that court rejected a distinction between agency action and the standard itself and held that an attack upon the standard itself "can be brought only in this court under Section 307(b)(1) of the Clean Air Act. . . ." *Oljato Chapter of Navajo Tribe v. Train, supra* at 656, 659.

The United States Court of Appeals for the D. C. Circuit also said:

> Unlike cases like *Functional Music* [*Functional Music, Inc. v. FCC*, 107 U.S.App. D.C. 34, 274 F.2d 543] where a party may challenge a specific application of an invalid rule, this case involves a general out-of-time challenge to the validity of an EPA standard, exactly what Congress intended to bar by limiting appeals (absent new information) to within 30 days of the rule's promulgation. Section 307(b)(1), 42 U.S.C.A. § 1857h–5(b)(1). Such limits are very common in judicial review statutes. *See, e. g.,* 15 U.S.C. § 78y (1970) (Securities & Exchange Commission); *id.* § 45(c) (Federal Trade Commission); 16 U.S.C. § 825*l* (1970) (Federal Power Commission); 49 U.S.C. § 1486(a) (1970) (Federal Aviation Administration). Indeed, in the Clean Air Act the Congress was particu-

larly concerned with rapid review of the promulgated standards, and so imposed the especially short 30-day filing period (the above cited statutes all allow 60 days) "[i]n order to maintain the integrity of the time sequences provided throughout the Act * * * ." S.Rep.No.91–1196, 91st Cong., 2d Sess., at 41 (1970). *Oljato Chapter of Navajo Tribe v. Train, supra* at 659 fn. 6.

Two other Circuits have also specifically applied the exclusive review provision of 307(b)(2)—albeit not in the setting of a criminal case: *Getty Oil Company (Eastern Operations), Inc. v. Ruckelshaus,* 467 F.2d 349 (3d Cir. 1972), *cert. denied,* 409 U.S. 1125, 93 S.Ct. 937, 35 L.Ed.2d 256 (1973); *Union Electric Co. v. Environmental Protection Agency,* 515 F.2d 206, 220 (8th Cir. 1975), *aff'd* 427 U.S. 246, 96 S.Ct. 2518, 49 L.Ed.2d 474 (1976). *See also City of Highland Park v. Train,* 519 F.2d 681 (7th Cir. 1975), *cert. denied,* 424 U.S. 927, 96 S.Ct. 1141, 47 L.Ed.2d 337 (1976).

More important still, the United States Supreme Court long ago upheld the exact sort of exclusivity in review here involved, although in the context of another regulatory act. In *Yakus v. United States,* 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944), the Court said:

> As we have seen, Congress, through its power to define the jurisdiction of inferior federal courts and to create such courts for the exercise of the judicial power, could, subject to other constitutional limitations, create the Emergency Court of Appeals, give to it exclusive equity jurisdiction to determine the validity of price regulations prescribed by the Administrator, and foreclose any further or other consideration of the validity of a regulation as a defense to a prosecution for its violation.

> Unlike most penal statutes and regulations whose validity can be determined only by running the risk of violation, see *Douglas v. City of Jeannette,* 319 U.S. 157, 163, [63 S.Ct. 877, 881, 882, 87 L.Ed. 1324], the present statute provides a mode of testing the validity of a regula-

tion by an independent administrative proceeding. There is no constitutional requirement that that test be made in one tribunal rather than in another, so long as there is an opportunity to be heard and for judicial review which satisfies the demands of due process, as is the case here. This was recognized in *Bradley v. Richmond, supra,* [227 U.S. 477, 33 S.Ct. 318, 57 L.Ed. 603], and in *Wadley Southern Ry. Co. v. Georgia, supra,* [235 U.S. [651] at pages] 667, 669, [35 S.Ct. [214] at pages 220, 221, 59 L.Ed. 405], and has never been doubted by this Court. And we are pointed to no principle of law or provision of the Constitution which precludes Congress from making criminal the violation of an administrative regulation, by one who has failed to avail himself of an adequate separate procedure for the adjudication of its validity, or which precludes the practice, in many ways desirable, of splitting the trial for violations of an administrative regulation by committing the determination of the issue of its validity to the agency which created it, and the issue of violation to a court which is given jurisdiction to punish violations. Such a requirement presents no novel constitutional issue. *Yakus v. United States, supra,* at 443–44, 64 S.Ct. at 676.

It should be noted that *Yakus,* like our instant appeal, was decided in the context of a criminal prosecution and involved an exclusive right of review statute. By its terms it is obvious that the Administrator issued the disputed regulation under § 112(b) of the Act. *See* 36 Fed.Reg. 23239 (1971); 38 Fed.Reg. 8820 (1973). Section 112(b) deals only with "National emission standards." Further, the disputed regulation is entitled an "emission standard." [2]

We do not believe that there is anything vague, ambiguous, or difficult to interpret in the prohibition of Section 307(b):

A petition for review of action of the Administrator in promulgating . . . any emission standard under section 1857c–7 of this title . . . may be filed only in the United States Court of Appeals for the District of Columbia.
Section 307(b), Clean Air Act, 42 U.S.C. § 1857h–5(b) (1970).

Its intent could hardly be more obvious.

■ Legislative history of the Clean Air Act supports the interpretation of Section 307(b) which we have set out above. The question of judicial review was considered only in the Senate. The Senate Report, S.Rep.No.91–1196, 91st Cong., 2d. Sess., 40–42 (1970), noted that review of emission standards was placed in the D. C. Circuit to assure "even and consistent national application" of the standards. The 30-day time limit for review was established "to maintain the integrity of the time sequences provided throughout the Act. . . ."

As we see this record, there is no doubt that appellant could have challenged the standard through the procedure outlined in Section 307(b)(1) had it chosen to do so.

We recognize, of course, that appellee relies strongly upon four District Court cases from the Northern District of Illinois: *United States v. National Wrecking Co.,* No. 74 CR 755 (N.D.Ill., Dec. 20, 1974); *United States v. Nardi Wrecking Co.* No. 74 CR 756 (N.D.Ill., Jan. 2, 1975); *United States v. Harvey Wrecking Co.,* No. 74 CR 758 (N.D.Ill., Jan. 7, 1975); *United States v. Brandenburg Demolition, Inc.,* No. 74 CR 757 (N.D.Ill., Jan. 31, 1975). Although some of these cases contain dicta which support the appellee's point of view on the jurisdiction issue, the decisions were actually based upon failure of the indictments to charge emission of a prohibited pollutant. As noted above, the indictment in our instant case clearly did charge such an emission; and we find the dicta unpersuasive.

2. We note, of course, that appellee claims that no matter what the Administrator called this regulation, it was a "work practice" standard rather than an "emission standard." We see nothing inconsistent with the purposes of this statute in the Administrator's promulgation of a "work practice" as a condition of an emission standard which, absent fulfillment of the work practice conditions, otherwise prohibits any emission of particulate asbestos material into the ambient air.

*Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), relied upon by the appellee is, we believe, inapposite. There was no similar prompt, exclusive review procedure provided in that case; and the facts showed that the NLRB "attempted [an] exercise of power that had been specifically withheld." *Leedom v. Kyne, supra* at 189, 79 S.Ct. at 184.

As to *Manges v. Camp,* 474 F.2d 97 (5th Cir. 1973), we consider it distinguishable on its facts and unpersuasive in any possible application to this appeal. We do not find in this record any "clear departure from statutory authority." *Manges v. Camp, supra* at 99.

■ No constitutional issues were decided by the District Judge or are properly before us in this appeal. Under what we have said above, we hold that the District Judge was in error in finding that he had jurisdiction to determine the validity of the disputed asbestos emission regulation and in dismissing the indictment.

The judgment of the District Court is reversed and the case is remanded to the District Court for further proceedings.