**Clockedile v. NH DOC**                    **CV-97-39-B**      04/12/00

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


**Nancy Clockedile**

    **v.**                                    Civil No. 97-39-B
                                          Opinion No. 00DNH089
**New Hampshire Department**
  **of Corrections, et al.**



**MEMORANDUM AND ORDER**



Nancy Clockedile sued the New Hampshire Department of
Corrections ("DOC") alleging sexual harassment and retaliation in
violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.
§ 2000e et seq.  The jury returned a defendant's verdict on
Clockedile's sexual harassment claim but awarded her substantial
damages on her retaliation claim.  The primary issue I must now
decide is whether the DOC is entitled to judgment as a matter of
law on Clockedile's retaliation claim because she failed to
notify the Equal Employment Opportunity Commission ("EEOC") of
the claim before she filed suit.

## I.

Clockedile was hired in March 1995 to work as a counselor in the DOC's community corrections department.[1]  See Tr., Day 2 at 77-80.[2]  One of her first assignments was to teach a class at the state prison's medium security unit ("MSU").  See id. at 83, 88.

John Martin, the supervisor in charge of the MSU, allegedly made a number of sexually inappropriate comments to Clockedile in May and June of 1995.  See id. at 89-94, 101-102.  When Clockedile later confronted Martin about his comments, she claims that "[h]e started laughing and he ran through the unit telling all the guys, hey, everybody, she's dreaming about me."  Id. at 95.  Martin thereafter refused to assist Clockedile with her work, cancelled one of her classes without justification, and wrongly blamed her for the cancellation.  See id. at 97-100, 108.

Clockedile filed a complaint against Martin with the DOC's

---

[1]  I limit my discussion of the facts to those that concern Clockedile's retaliation claim.  Where a material fact is in dispute, I cite the version that favors Clockedile.  See Negron-Rivera v. Rivera-Claudio, 204 F.3d 287, 289 (1st Cir. 2000).

[2]  "Tr." refers to the trial transcript.

sexual harassment committee on November 27, 1995.[3]  See Ex.
B(27); Tr., Day 2 at 109-110.  Approximately two weeks later, she
filed a sexual harassment charge with the New Hampshire Human
Rights Commission ("NHHRC").[4]  See Ex. B(19); Tr., Day 2 at 110.
Clockedile claimed in the charge that Martin had sexually
harassed her and had retaliated against her after she confronted
him about his behavior.  See Ex. B(19).  After Clockedile filed
the charge, her immediate supervisor allowed her to cancel her
class at the MSU.  See Tr., Day 3 at 3.  Accordingly, she had no
further contact with Martin.  See id.

On January 15, 1996, the DOC transferred Clockedile from an
office on the state prison grounds to a new workplace at Shea
Farm halfway house.  See Ex. I(3); Tr., Day 2 at 111.  Unlike

---

[3]  The DOC investigated Clockedile's complaint but took no
action against Martin after concluding that it could not
substantiate her charges.  See Ex. 2-A; Ex. B(1); Ex. B(28).
("Ex." refers to the exhibits entered in evidence at trial.)

[4]  The NHHRC and the EEOC have entered into a work-sharing
arrangement which provides that a filing with the NHHRC also is
deemed to be a filing with the EEOC.  See Madison v. St. Joseph
Hosp., 949 F. Supp. 953, 958 (D.N.H. 1996).  Because this case
concerns the EEOC filing requirement, I refer to Clockedile's
filing as the "EEOC charge."

-3-

Clockedile's former office, her new workplace was merely a desk in a hallway adjacent to a bathroom. See Ex. L; Tr., Day 2 at 111-113. Later that spring, the DOC transferred Clockedile from the community corrections department to the mental health unit. See Tr., Day 2 at 119-121. It also modified her work assignments and moved her back to an office on the prison grounds. See id. at 118-119, 121-122. Clockedile claimed at trial that the DOC moved her workplace and transferred her to retaliate against her because she filed a sexual harassment charge. See Tr., Day 7 at 67, 68, 78-79.

After she filed her EEOC charge, Clockedile repeatedly complained that other employees were being sexually harassed and that she was facing retaliation because she had filed the charge. In August 1996, she complained to a prison investigator that a male officer had harassed a female officer, had incited male officers to discriminate against female officers, and had spread rumors that Clockedile was attempting to persuade a female officer to file a sexual harassment complaint. See Ex. J(1). In October, she complained that several DOC employees had mistreated her and spread false stories about her in retaliation for her

earlier sexual harassment and retaliation complaints. See Ex. J(4); Tr., Day 2 at 137-142. She also identified other DOC employees whom she claimed had been sexually harassed. See Ex. J(4). In November, Clockedile complained that a supervisor had retaliated against her by attempting to prevent another DOC employee, whom she was dating, from meeting with her during her breaks. See Ex. 6-B; Tr., Day 2 at 129-134.

The DOC investigated Clockedile's complaints but took no further action because it concluded that it could not substantiate her allegations. See Ex. J(1). The DOC's sexual harassment investigator also ordered Clockedile not to "meddle" in the sexual harassment complaints of other employees. See Ex. J(6).

On January 7, 1997, the Administrative Director of the DOC's division of medical and forensic services, Joseph Panerello, sent Clockedile a letter of warning charging that she had violated prison policies by exhibiting uncooperative and disruptive behavior. See Ex. A(15); Tr., Day 2 at 143. Panerello cited three distinct incidents to support the letter of warning. First, he alleged that Clockedile repeatedly had failed to comply

with directives from her supervisors to produce physicians'
certificates justifying medical leave she took on several
occasions during 1996. See Ex. A(15) at 1-2. Second, he claimed
that Clockedile had made sexual harassment and retaliation
complaints against other employees but had refused to cooperate
with the DOC's investigations of her charges. See id. at 2.
Third, he alleged that in December 1996 Clockedile had involved
herself in the investigation of another employee's sexual
harassment claim in violation of the earlier order not to meddle
in the sexual harassment complaints of third parties. See id.

Clockedile unsuccessfully appealed the letter of warning,
contending that it was unjustified and that Panerello had issued
it in retaliation for her earlier sexual harassment and
retaliation complaints. See Ex. A(14); Tr., Day 2 at 144, 146-
147. She took medical leave on February 11, 1997, and never
returned to work. See Ex. A(7) at 1. She was terminated on May
9, 1997. See id.; Ex. A(5).

Clockedile never notified the EEOC of her claim that other
DOC employees had retaliated against her after she filed her
discrimination charge with the agency. Nevertheless, she based

-6-

her claim at trial on acts of retaliation that occurred after she filed the charge. On October 29, 1999, the jury returned a defendant's verdict on Clockedile's sexual harassment claim but awarded her $129,111 in compensatory damages and back pay on her retaliation claim.

## II.

A claimant must file a timely charge with the EEOC before commencing an action asserting a Title VII violation. <u>See</u> 42 U.S.C. § 2000e-5(f)(1) (1994); <u>Lattimore v. Polaroid Corp.</u>, 99 F.3d 456, 464 (1st Cir. 1996). To be timely, a charge ordinarily must be filed within 180 days after the unlawful employment practice occurs. <u>See</u> 42 U.S.C. § 2000e-5(e)(1) (1994); <u>see</u> <u>also</u> <u>Delaware State College v. Ricks</u>, 449 U.S. 250, 256 (1980). In a deferral state such as New Hampshire, however, the filing period is extended to 300 days. <u>See</u> 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1601.74 (1999) (listing the NHHRC as a designated agency). This requirement operates as a statute of limitations rather than a restriction on the court's subject matter jurisdiction. <u>See</u> <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S.

385, 393, 398 (1982); <u>Jones v. Runyon</u>, 91 F.3d 1398, 1399-1400 n.1 (10th Cir. 1996) (collecting cases applying <u>Zipes</u> to EEOC filing requirement generally).  Thus, the requirement is subject to both waiver and equitable modification.  <u>See</u> <u>Zipes</u>, 455 U.S. at 393, 398.

Even if a plaintiff files a timely charge with the EEOC, disputes may arise as to whether claims later asserted in a complaint were adequately described in the charge.  <u>See, e.g.</u>, <u>Lattimore</u>, 99 F.3d at 463-64.  Title VII does not explicitly address this issue.  Nevertheless, the general rule in the First Circuit is that "[t]he scope of the civil complaint is . . . limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." <u>Powers v. Grinnell Corp.</u>, 915 F.2d 34, 38 (1st Cir. 1990) (quoting <u>Less v. Nestlé Co., Inc.</u>, 705 F. Supp. 110 (W.D.N.Y. 1988) and citing, inter alia, <u>Johnson v. General Elec.</u>, 840 F.2d 132, 139 (1st Cir. 1988)) (internal quotation marks omitted). The court has explained this "scope of the charge" rule by stating:

> An administrative charge is not a blueprint
> for the litigation to follow.  Thus, the

-8-

> exact wording of the charge of discrimination
> need not presage with literary exactitude the
> judicial pleadings which may follow.  Rather,
> the critical question is whether the claims
> set forth in the civil complaint come within
> the scope of the EEOC investigation which can
> reasonably be expected to grow out of the
> charge of discrimination.

Id., at 38-39 (internal citations and quotation marks omitted).

Applying the scope of the charge rule can present special challenges where a plaintiff asserts that she suffered retaliation after filing an EEOC charge.  Such claims obviously cannot be specifically described in the original charge.  Thus, unless a plaintiff amends her charge to expressly include the new retaliation claim, she runs a risk that the court will later conclude that the claim is time barred.  Recognizing this difficulty, every other circuit court that has addressed the issue has concluded that a Title VII claimant is not barred from litigating a retaliation claim that arises after the original EEOC charge is filed even though the claimant did not present the retaliation claim to the EEOC in an amended charge.  See Anjelino v. New York Times Co., 200 F.3d 73, 96 (3d Cir. 1999); Anderson v. Reno, 190 F.3d 930, 938 (9th Cir. 1999); Nealon v. Stone, 958

F.2d 584, 590 (4th Cir. 1992); Carter v. South Cent. Bell, 912 F.2d 832, 841 (5th Cir. 1990); Ang v. Proctor & Gamble Co., 932 F.2d 540, 546-47 (6th Cir. 1991) (dictum); Malhotra v. Cotter & Co., 885 F.2d 1305, 1312 (7th Cir. 1989); Wentz v. Maryland Cas. Co., 869 F.2d 1153, 1154 (8th Cir. 1989); Brown v. Hartshorne Public Sch. Dist. #1, 864 F.2d 680, 682 (10th Cir. 1988); Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 169 (11th Cir. 1988); Kirkland v. Buffalo Bd. of Educ., 622 F.2d 1066, 1068 (2d Cir. 1980) (per curiam).

The First Circuit stands alone in requiring a plaintiff to specifically notify the EEOC of a retaliation claim that arises after she files the original charge. In Johnson v. General Electric, 840 F.2d 132 (1st Cir. 1988), the plaintiff filed a discrimination charge with the EEOC alleging that he repeatedly had been denied promotion because of his race. See id. at 133. He later filed suit alleging both that his employer had discriminated against him and that it had retaliated against him after he filed his EEOC charge. See id. at 133-34, 139. In rejecting the plaintiff's retaliation claim, the court reiterated its general rule that

> [n]o claim may be brought in federal court
> unless the prerequisite of administrative
> investigation has first been met.  A
> complaint related to that brought before the
> EEOC, but which was not itself made the
> subject of a separate EEOC complaint, must
> reasonably be expected to have been within
> the scope of the EEOC's investigation in
> order to meet the [administrative filing
> requirement].

Id. at 139.  The court then stated that "[t]he retaliation claim here could not have been expected to be part of the scope of the EEOC's investigation growing out of appellant's earlier complaints, because plaintiff has not alleged that he even informed the EEOC of the alleged retaliation."  Id.  Johnson thus establishes a general rule in the First Circuit that a Title VII claimant ordinarily must notify the EEOC of retaliation that occurs in response to the filing of an EEOC charge before pursuing a claim based on the retaliatory conduct in court.

## III.

Relying on Johnson, the DOC argues that it is entitled to judgment as a matter of law on Clockedile's retaliation claim because she failed to notify the EEOC of the claim within Title

VII's 300-day limitation period. Clockedile responds by contending that: (1) the DOC waived its right to assert its statute of limitations defense by failing to present the defense in a motion to dismiss or a motion for summary judgment; (2) Johnson is distinguishable because Clockedile included a retaliation claim in her EEOC charge; (3) the court has ancillary jurisdiction to consider the retaliation claim even if Clockedile failed to properly present the claim to the EEOC; and (4) the court should refuse to apply Johnson because it would exalt form over substance to require a plaintiff to notify the EEOC of retaliation that occurs after an EEOC charge is filed as a prerequisite to challenging the retaliation in court. I address each argument in turn.

**A.**

Clockedile contends that the DOC waived its right to invoke the timely filing requirement because it failed to raise the issue prior to trial. I disagree. The DOC pleaded the statute of limitations as an affirmative defense in accordance with Fed. R. Civ. P. 8(c). See Answer (Doc. #3) ¶ 32; Answer to First Am. Compl. (Doc. #11); Answer to Second Am. Compl. (Doc. #17). It

-12-

also complied with Local Rule 16.2(b)(5) by notifying Clockedile in its final pretrial statement that it did not intend to waive any defenses. See Def.'s Pretrial Statement (Doc. #38) at 11. Further, in accordance with Fed. R. Civ. P. 50(a), it filed a timely motion for judgment as a matter of law asserting the defense. See Def.'s Supplement to Mot. for J. as a Matter of Law and Supporting Mem. (Doc. #52). The cases Clockedile relies on to support her waiver argument thus are distinguishable. See Wolf v. Reliance Standard Life Ins. Co., 71 F.3d 444, 450 (1st Cir. 1995) (affirmative defense waived when not pleaded in answer); Violette v. Smith & Nephew Dyonics, Inc., 62 F.3d 8, 10-11 (1st Cir. 1995) (preemption defense asserted on appeal waived when not presented in a timely motion for judgment as a matter of law). While I agree that the DOC wasted valuable judicial resources by not raising the matter sooner, its failure to do so does not prevent it from asserting the defense in a timely motion for judgment as a matter of law.

**B.**

The Johnson court implicitly rejected the premise that retaliation that occurs in response to the filing of a

discrimination charge with the EEOC necessarily falls within the scope of the EEOC charge.  See 840 F.2d at 139.  Nevertheless, Clockedile argues that her case is distinguishable because she included a retaliation claim in her charge.

I reject Clockedile's argument because the retaliatory conduct she described in her EEOC charge is substantially different from the conduct that formed the basis of her retaliation claim at trial.  First, Clockedile complained in the charge about Martin's retaliatory conduct, see Ex. B(19) at 2, but argued at trial that other employees in her supervisory chain of command had retaliated against her.[5]  Second, the conduct she cited in the charge occurred in the summer of 1995, see Ex. B(19) at 1-2; Ex. B(27) at 1, whereas she based her claim at trial on conduct that occurred months later in 1996 and 1997.  Third, she claimed in the charge that Martin had retaliated against her because she confronted him about his harassment of her.  See Ex. B(19) at 2.  At trial, in contrast, she claimed that the DOC had

_____

[5]  My characterization of the retaliation claim that Clockedile litigated at trial is based on both her testimony on direct examination and the closing argument made by her counsel. See Tr., Day 2 at 111-114, 117-122, 143, 148-152; Day 7 at 67-69, 71, 76, 78-79.

retaliated against her because she filed the charge and complained about the sexual harassment of other employees. Because the retaliation claim Clockedile described in the charge involved different employees, a different time period, and different protected activities from the claim she litigated at trial, I cannot distinguish Johnson simply by noting that Clockedile included a retaliation claim in the charge. See Lattimore, 99 F.3d at 465 (concluding that trial claim was not within the scope of EEOC charge because it involved different facts, was temporally distinct, and concerned different individuals).

### C.

Clockedile next argues that I have ancillary jurisdiction to consider her retaliation claim even though she did not present the claim to the EEOC. The Fifth Circuit has relied on the concept of ancillary jurisdiction to address the merits of retaliation claims that were not presented to the EEOC. See Gupta v. East Texas State Univ., 654 F.2d 411, 414 (5th Cir. 1981). Further, while the First Circuit has not decided whether a court may invoke ancillary jurisdiction to consider such

claims, see Johnson, 840 F.2d at 139 n.8, at least one district court in this circuit has done so.  See Borase v. M/A-COM, Inc., 906 F. Supp. 65, 69 (D. Mass. 1995) (asserting ancillary jurisdiction to consider retaliation claim not presented to the EEOC).  Nevertheless, I decline to follow the path taken by the Fifth Circuit.  The Supreme Court has determined that a litigant's failure to file a timely EEOC charge does not deprive the court of subject matter jurisdiction to consider her Title VII claim.  See Zipes, 455 U.S. at 393, 398; Jones, 91 F.3d at 1399-1400 n.1.  Because Clockedile's failure to satisfy Title VII's timely filing requirement does not present a jurisdictional defect, she cannot save her retaliation claim merely by asserting that the court has ancillary jurisdiction to consider the claim.

## D.

Finally, Clockedile contends that I should reject the DOC's argument because it would exalt form over substance to require a Title VII claimant to return to the EEOC before proceeding to court on a retaliation claim that arises in response to the filing of an EEOC charge.  While I agree that there is little to

be gained and much to be lost from such a requirement, I reluctantly conclude that <u>Johnson</u> mandates this result.

The EEOC filing requirement was intended "to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation." <u>Lattimore</u>, 99 F.3d at 464. Conciliation is unlikely, however, in cases where the claimant asserts that her employer retaliated against her after she filed an EEOC charge. Whether or not the retaliation actually occurred, the employee's assertion of a retaliation claim signals a deterioration in the relationship between the parties that makes early conciliation unlikely. Applying a strict filing requirement to post-charge retaliation claims thus will rarely serve the purpose that the requirement was intended to fulfill.

The requirement also imposes an administrative burden on employees that will inhibit the resolution of legitimate retaliation claims. Employees will lose the chance to litigate post-charge retaliation claims unless they are aware of <u>Johnson</u>'s filing requirement. The risk that legitimate claims will be foreclosed through inadvertence is enhanced because the requirement applies only in this circuit. Since the filing

requirement imposes a significant administrative burden on victims of retaliation without serving any legitimate purpose, I would not require a claimant in Clockedile's position to return to the EEOC before filing a post-charge retaliation claim if I were writing on a clean slate. Nevertheless, I must grant the DOC's motion for judgment as a matter of law because I am bound by First Circuit precedent. If <u>Johnson</u> is to be reconsidered, it must be by an <u>en</u> <u>banc</u> court rather than by a single district court judge.

## IV.

The DOC alternatively argues that it is entitled to judgment as a matter of law because Clockedile failed to prove her retaliation claim at trial. I address this argument now to expedite the resolution of the case in the event that the court of appeals rejects the DOC's statute of limitations defense.

The elements of a Title VII retaliation claim are well understood. To establish a prima facie case, a plaintiff must prove that (1) she engaged in protected conduct; (2) she suffered an "adverse employment action"; and (3) the adverse action is

causally linked to the plaintiff's protected activity.  See Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998); Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996).  If the plaintiff establishes her prima facie case, the defendant must respond by providing an innocent explanation for its actions.  See Fennell, 83 F.3d at 535.  The presumption of retaliation arising from proof of a prima facie case dissipates if the defendant satisfies this burden of production.  Accordingly, if the defendant offers a legitimate explanation for its actions, the plaintiff cannot prevail unless she proves that the defendant's explanation is pretextual and that retaliation was the true reason for the defendant's actions. See id.

Clockedile satisfied the first element of her prima facie case by demonstrating that she filed a sexual harassment charge with the EEOC and complained about sexual harassment and retaliation to DOC officials in August, October, and November of 1996.  See Ex. B(19); Ex. J(1); Ex. J(4); Ex. 6-B; Tr., Day 2 at 129-134, 137-142.  This clearly constitutes protected activity under Title VII.  See 42 U.S.C. § 2000e-3(a) (1994); Hochstadt v.

-19-

Worcester Found. for Experimental Biology, 545 F.2d 222, 231 (1st Cir. 1976) (stating that Title VII's opposition clause "clearly does protect an employee against discharge for filing complaints in good faith before federal and state agencies and for registering grievances through channels appropriate in the particular employment setting").

Clockedile also produced sufficient evidence to support her assertion that she suffered adverse employment actions after she engaged in activities protected by Title VII. The DOC's decision to transfer Clockedile from an office to a desk in a hallway and its issuance of the letter of warning both potentially qualify as adverse employment actions under Title VII. See Hernandez-Torres, 158 F.3d at 47 (explaining that Title VII's retaliation provision "encompasses a variety of adverse employment actions, including demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees").

Finally, Clockedile has produced sufficient circumstantial evidence to support her contention that the DOC took adverse action against her in retaliation for having engaged in conduct

protected by Title VII. The record establishes that the DOC moved Clockedile from an office on the prison grounds to a desk in a hallway at the Shea Farm halfway house approximately one month after she filed her EEOC charge. Compare Ex. I(3); Tr., Day 2 at 111-113, with Ex. B(19). Further, she received the letter of warning on January 7, 1997, only two months after she made the last of several sexual harassment and retaliation complaints to the DOC. Compare Ex. A(15) with Ex. 6-B; Tr., Day 2 at 129-134. The timing of these actions is suggestive of a retaliatory motivation. See Beliveau v. United States Dep't of Labor, 170 F.3d 83, 87 (1st Cir. 1999) ("[T]emporal proximity is an important component (in fact, often the most persuasive factor) in the employee's required proof of a causal relationship between his or her statutory protected conduct and the employer's asserted retaliation . . . ."). Further, the DOC issued an order to Clockedile not to "meddle" in the sexual harassment complaints of third parties and subsequently disciplined her in part because she allegedly disregarded the order. See Ex. J(6); Ex. A(15). Because the DOC issued this order shortly after Clockedile complained to the DOC that another employee had been sexually

harassed, compare Ex. J(6) with Ex. J(4), the jury reasonably could have viewed the order and the DOC's decision to punish Clockedile for violating it as evidence of an effort by the DOC to prevent Clockedile from engaging in conduct protected by Title VII.

When ruling on a motion for judgment as a matter of law, I may not substitute my own assessment of the relative strengths of each party's case  for the result reached by the jury.  See Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 716 (1st Cir. 1994). Instead, I must deny the motion unless no reasonable jury could have reached the verdict the jury returned.  See id.; Negron-Rivera v. Rivera-Claudio, 204 F.3d 287, 289-90 (1st Cir. 2000). Viewing the evidence in the light most favorable to Clockedile, it is sufficient to support a reasonable conclusion that she suffered unlawful retaliation because she had filed an EEOC charge and complained to the DOC of unlawful harassment and retaliation.  Accordingly, I reject the DOC's contention that Clockedile failed to prove her retaliation claim at trial.

**V.**

For the reasons set forth in this order, I grant the DOC's renewed motion for judgment as a matter of law (document no. 67).

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

April 12, 2000

cc:   Michael Sheehan, Esq.
      Nancy Smith, Esq.